**UNITED FOOD & COMMERCIAL WORKERS UNION, LOCAL 919, AFL–CIO, Plaintiff–Appellant,**

v.

**CENTERMARK PROPERTIES MERIDEN SQUARE, INC., HO Meriden Square Development Co., doing business as H. Co. May Centers Meriden Square Partnership, and The May Department Stores Co., doing business as Filene's, Defendants–Appellees.**

No. 1332, Docket 93–9147.

United States Court of Appeals, Second Circuit.

Argued April 20, 1994.

Decided July 12, 1994.

Harry B. Elliott, Hartford, CT (J. William Gagne, Jr., Gregory C. Norsigian, Gagne & Associates, of counsel), for appellant.

Eric Hemmendinger, Baltimore, MD (Stephen D. Shawe, Shawe & Rosenthal, of counsel), for appellee May Dept. Stores Co.

Benjamin A. Lipman, St. Louis, MO (John J. Moellering, Lewis, Rice & Fingersh, of counsel), for appellees CenterMark Properties Meriden Square and HO Meriden Square Development Co.

Before: MESKILL, ALTIMARI and McLAUGHLIN, Circuit Judges.

MESKILL, Circuit Judge.

This dispute arises from a ban on union picketing and leafleting at a privately owned shopping mall during a campaign by plaintiff-appellant United Food and Commercial Workers Union, Local 919, AFL–CIO (Union) to organize workers at a Filene's department store located on mall property. In an effort to remove the restrictions on leafleting and picketing, the Union filed an action in Connecticut Superior Court for injunctive relief pursuant to Art. 1, §§ 4 and 5 of the Connecticut Constitution against the owners of the mall property, defendants-appellees CenterMark Properties Meriden Square, Inc. and HO Meriden Square Development Co., collectively d/b/a Meriden Square Partnership (Meriden Square), and defendant-appellee May Department Stores Co., d/b/a Filene's (May), the owner and manager of the Filene's department store, whose employees the Union seeks to organize. May, with the consent of Meriden Square, removed the action to the United States District Court for the District of Connecticut, Covello, *J.*, and then May and Meriden Square (collectively "defendants") moved to dismiss it for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). The district court granted dismissal.

On appeal, the Union, for the first time, raises the propriety of federal subject matter jurisdiction and urges us to return the action to state court for a ruling on the merits. Because we conclude that a resolution of the jurisdictional issue requires further findings and because we believe that the district court should be given an opportunity to resolve the jurisdictional issue, we vacate the judgment

and remand the matter to the district court for further proceedings.

## BACKGROUND

The complaint alleges, *inter alia*, that the Union is a labor organization within the meaning of Conn.Gen.Stat. § 31–77 with a principal place of business in Farmington, Connecticut. Defendant May is a corporate entity with its principal place of business in St. Louis, Missouri. Meriden Square is a partnership between defendant CenterMark Properties Meriden Square, Inc., a corporate entity with a principal place of business also in St. Louis and defendant HO Meriden Square Development Co., a corporate entity with a principal place of business in Chicago, Illinois.

The Union has been attempting to organize non-union employees who work at a Filene's department store (Filene's). Filene's is owned and operated by May and located at the Meriden Square Mall (Mall). The Mall, a large retail shopping complex located in Meriden, Connecticut, is owned by Meriden Square. As part of the Union's organizing efforts, its members and staff distribute literature, display placards or signs, and engage in verbal communication.

On June 11, 1993, Joseph Mahar (Mahar), Filene's general manager, informed the Union that Filene's prohibited non-employees from distributing literature or otherwise soliciting support on the Union's behalf on Filene's property, property that includes the sidewalks and access ways immediately adjacent to the Filene's building. In a letter dated June 21, 1993, moreover, Meriden Square notified the Union that its distribution and solicitation activities were prohibited on Mall property absent prior approval by Meriden Square. As a result of these prohibitions, the Union has been denied access to Mall property for the purposes of carrying out its distribution and solicitation activities.

The Union alleges that because the Mall is the largest retail shopping center in Meriden, it has assumed a uniquely public character and, thus, is subject to the free speech requirements of Art. 1, §§ 4 and 5 of the Connecticut Constitution. In an effort to vindicate its purported right to freedom of speech thereunder, the Union filed suit in Connecticut Superior Court seeking a temporary and permanent injunction enjoining May and Meriden Square from prohibiting the Union from engaging in its solicitation and leafleting campaign on Mall property.

On July 28, 1993, May, with the consent of Meriden Square, removed the action to federal court. The notice of removal asserted that the requirements for both diversity jurisdiction and federal question jurisdiction were met. With respect to diversity jurisdiction, the notice of removal asserted that there was complete diversity of citizenship among the parties and that the amount in controversy exceeded $50,000. As to federal question jurisdiction, the notice of removal asserts that the Union's cause of action is preempted by federal labor law.

May and Meriden Square then moved to dismiss the complaint, pursuant to Fed. R.Civ.P. 12(b)(6), for failure to state a claim under the Connecticut Constitution. The Union opposed the motion on the merits but did not file a motion to remand the case to state court for lack of federal jurisdiction pursuant to 28 U.S.C. § 1447(c). The district court granted defendants' motions. Specifically, the court found the Union's claim to be identical to claims previously rejected by the Connecticut Supreme Court, *see Cologne v. Westfarms Assocs.*, 192 Conn. 48, 469 A.2d 1201 (1984), as well as the federal courts, *see United Food & Commercial Workers Union, Local 919, AFL–CIO v. Lechmere, Inc.*, 682 F.Supp. 15 (D.Conn. 1988). The court reasoned that, although the Connecticut Supreme Court was divided on the issue of whether the Connecticut Constitution gives advocacy groups the right to demonstrate or handbill on private property, including shopping malls, the majority's decision that it did not was fatal to the Union's cause of action. The court noted, moreover, that only the Connecticut Supreme Court had the authority to revisit its decision in *Cologne*. Accordingly, the district court dismissed the complaint for failure to state a claim and final judgment entered on October 8, 1993.

This appeal followed.

## DISCUSSION

On appeal, the Union argues for the first time that the district court lacked subject matter jurisdiction. Specifically, it contends that no basis exists for the assertion of federal jurisdiction over this action because the complaint raises neither a federal question nor provides a basis for diversity jurisdiction. Thus, the Union now asks us to determine whether this action, which it filed in state court, belongs in federal court despite its failure to challenge the removal to the district court via a motion to remand pursuant to 28 U.S.C. § 1447(c).

■ The failure of the parties to contest the district court's authority to hear a case "does not act to confer [federal] jurisdiction ... since a challenge to subject matter jurisdiction cannot be waived and may be raised *sua sponte* by ... a federal appellate court." *Alliance of Am. Insurers v. Cuomo*, 854 F.2d 591, 605 (2d Cir.1988); *see also* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350, at 202–05 (1990) (Wright & Miller). Indeed, our cases make clear that "[i]t is common ground that in our federal system of limited jurisdiction any party or the court sua sponte, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction." *Manway Constr. Co. v. Housing Auth. of Hartford*, 711 F.2d 501, 503 (2d Cir.1983). Where jurisdiction is lacking, moreover, dismissal is mandatory. *Id.* We must, therefore, entertain the Union's jurisdictional challenge regardless of its unexplained failure to raise the issue with the district court in a motion to remand pursuant to 28 U.S.C. § 1447(c).

To that end, the party asserting jurisdiction bears the burden of proving that the case is properly in federal court and that party may not "be relieved of [its] burden by any formal procedure." *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *see also In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 730 (2d Cir.1993). Thus, "[i]f [the averring party's] allegations of jurisdictional facts are challenged by [its] adversary in *any appropriate* manner, [the averring party] must support them by competent proof." *McNutt*, 298 U.S. at 189, 56 S.Ct. at 785 (emphasis added). Where, as here, jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of establishing that removal is proper. *See R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir.1979); *see also* 14A Wright & Miller § 3721, at 209–10 ("[d]efendant always has the burden of establishing that removal is proper").

Applying these principles, we must determine from the record before us whether the defendants can establish a basis for either diversity or federal question jurisdiction. *See* 14A Wright & Miller § 3723, at 311–12 (usual rule is that removability is determined from the record as of the time the petition for removal is filed but where basis of removal is diversity then diversity of citizenship must exist at time action was filed in state court as well as at time of removal).

### A. Diversity Jurisdiction

Diversity jurisdiction is conferred upon the district courts in "civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, *and* is between[,]" *inter alia*, "citizens of different States." 28 U.S.C. § 1332(a)(1) (emphasis added).

■ Here, the Union concedes that diversity of citizenship exists in this case and challenges only the defendants' assertion in its removal petition that the amount in controversy exceeds $50,000. In light of our independent duty to examine our jurisdiction, *see FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 607–08, 107 L.Ed.2d 603 (1990); *Clark v. Paul Gray, Inc.*, 306 U.S. 583, 588, 59 S.Ct. 744, 748, 83 L.Ed. 1001 (1939); *Thompson v. County of Franklin*, 15 F.3d 245, 248 & n. 3 (2d Cir.1994), however, the Union's concession, when taken in light of the record before us, is not dispositive of whether this controversy is between "citizens of different States" where, as here, the Union is an unincorporated association for purposes of determining its citizenship. *See United Steelworkers of America, AFL–CIO v. R.H. Bouligny, Inc.*, 382 U.S. 145, 152–53, 86 S.Ct. 272, 275–76, 15 L.Ed.2d 217

(1965). Accordingly, we examine the diversity of the parties' citizenship as well as the amount in controversy.

### 1. *Diversity of Citizenship*

■ The notice of removal avers that there is complete diversity of citizenship because defendants are corporate citizens of Missouri and Illinois respectively and because "[t]he Plaintiff in this action [the Union] is a citizen of Connecticut." A review of the record, however, provides no basis for this or any conclusion about the Union's citizenship for purposes of determining the propriety of diversity jurisdiction in this case.

The Union avers in its complaint that it is a labor organization within the meaning of Conn.Gen.Stat. § 31–77 whose principal place of business is Farmington, Connecticut. Thus, the removal petition on its face treats the Union as a corporate entity for purposes of determining its citizenship in this action.

The parties conceded at oral argument, however, that the Union is not a corporate entity but an unincorporated association. Furthermore, defendants conceded that the record contains no evidence to support the claim of complete diversity of citizenship between the parties if the Union is viewed as an unincorporated association rather than as a single corporate entity.

Here, the distinction between a corporate entity and an unincorporated association is significant. Unlike a corporate entity whose citizenship is determined by its place of incorporation or its principal place of business, the citizenship of an unincorporated association, such as a labor organization, is determined by the citizenship of *each* of its members. *United Steelworkers,* 382 U.S. at 146–47, 86 S.Ct. at 272–73; *Loss v. Blankenship,* 673 F.2d 942, 949 (7th Cir.1982) ("[t]he citizenship of a union for diversity purposes is the citizenship of each of its members"). Thus, treating the Union as an unincorporated association alters the focus of the diversity inquiry in this case.

Admittedly, the Union in this case is a local affiliate of the United Food and Commercial Workers, AFL–CIO (International), an international labor organization. Although this particular record is silent as to the geographic composition of its membership, we suspect that the International has members in many states, if not all fifty states, including Missouri and Illinois. Thus, were we to consider the membership of the International, it is likely that there would be no diversity of citizenship between these parties.

Where the injury alleged in the complaint is a "particularized one," affecting only the workers of a local union, however, a federal court may look exclusively to the citizenship of the local's membership to determine citizenship. *See, e.g., Loss,* 673 F.2d at 949. Such an approach is appropriate here since "[t]his is not a situation where a local is representing its international in order to establish favorable jurisdiction." *Id.* Rather, we believe that the matters at issue here concern primarily the membership of the Union, not that of the International. We, therefore, "see no reason to look beyond the citizenship of [the Union's] members in determining diversity." *Id.*

In any event, defendants do not aver in their notice of removal that complete diversity of citizenship exists between *each* member of the Union and defendants, May and Meriden Square. Defendants, moreover, have provided no affidavits, documents or other evidence to support a finding that complete diversity of citizenship exists between each member of the Union and the defendants. While we would be surprised if the Union had any members who were commuting to work from their residences in Missouri or Illinois, we are not free to speculate on the citizenship of each of the Union's members in the complete absence of any evidence regarding members' citizenship. On this record, therefore, we believe it prudent to remand the issue and thereby allow the parties to supplement the record on the issue of each Union member's citizenship and allow the district court to make an initial determination as to whether complete diversity of citizenship exists in this case. *See Harvey Constr. Co. v. Robertson–Ceco Corp.,* 10 F.3d 300, 304 (5th Cir.1994) (remanding issue of citizenship to district court for further findings where appellate court was unable to

determine diversity of citizenship from the record); *Prakash v. American Univ.*, 727 F.2d 1174, 1181 (D.C.Cir.1984) (remanding diversity of citizenship issue for evidentiary hearing where district court based its finding of diversity on conclusory documentary submissions).

### 2. *Amount in Controversy*

■ Citizenship notwithstanding, the Union does challenge defendants' assertion in the notice of removal that the amount in controversy exceeds the jurisdictional minimum of $50,000. In response, defendants offer two theories as to why the amount in controversy requirement has been satisfied in this case. First, defendants contend that, by failing to challenge the amount in controversy in the district court on a motion to remand, the Union has conceded the issue. That concession, defendants argue, relieves them of their burden in this appeal of establishing that the amount in controversy exceeds the statutory minimum. Second, assuming that the Union has not waived the issue, defendants argue nonetheless that the Union's pleadings are sufficient to establish that the amount in controversy exceeds $50,000 for jurisdictional purposes. We find neither argument persuasive.

### a. *Waiver*

The crux of defendants' waiver claim is that by failing to raise the sufficiency of the amount in controversy in the district court in a timely motion to remand pursuant to section 1447(c), the Union has conceded the validity of defendants' factual assertion of the amount in controversy set forth in the removal petition. Although defendants acknowledge that diversity jurisdiction cannot be waived *per se*, they seek to characterize the amount in controversy inquiry as a factual rather than legal predicate to jurisdiction. As such, defendants ask us to hold that the Union has conceded any dispute over the value of its action because it failed to contest defendants' factual assertion that the amount in controversy exceeds the statutory minimum in the district court. We decline.

Federal courts are courts of limited jurisdiction whose power is limited strictly by Article III of the Constitution and congressional statute. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). Indeed, "the subject matter jurisdiction of the federal courts is too basic a concern to the judicial system to be left to the whims and tactical concerns of the litigants." 13 Wright & Miller § 3522, at 67–68. Litigants, therefore, cannot waive subject matter jurisdiction by express consent, conduct, or estoppel because they "fail[ ] to challenge jurisdiction early in the proceedings." *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2105, 72 L.Ed.2d 492 (1982).

A harsh consequence of this principle is that a party who is unhappy with the result achieved in the district court may challenge jurisdiction on appeal, even if that party failed to challenge jurisdiction below. *See, e.g., American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 16–18, 71 S.Ct. 534, 541–42, 95 L.Ed. 702 (1951) (remanding case to state court where petitioner successfully challenged diversity of citizenship on appeal after removing action and then losing on the merits in the district court).

Admittedly, the application of this principle does not always yield the most sensible regulation of procedure where, as here, the "whim" of the litigants may have led the district court to reach a decision on the merits. The rule that a party who loses below on the merits nevertheless may challenge jurisdiction on appeal, however, is justified "in terms of the delicate problems of federal-state relations that are involved." 13 Wright & Miller § 3522, at 68–69.

Such concerns are particularly prominent here, where the Union seeks to vindicate a free speech right under the Connecticut Constitution, a realm of law in which the Connecticut courts are supreme. The Union, moreover, seeks to extend that state constitutional right beyond any domain heretofore recognized by the Connecticut Supreme Court. *But cf. Cologne*, 192 Conn. at 66–85, 469 A.2d 1201 (Peters, *J.*, dissenting). As such, this strikes us as a particularly inappropriate case for the creation of an even limited exception to the settled rule that the

parties cannot concede jurisdictional facts. Accordingly, we decline to hold that the Union has waived its right to challenge for the first time in this litigation the defendants' assertion of the amount in controversy set forth in the notice of removal.

In support of their position, defendants offer us *Shaw v. Dow Brands, Inc.*, 994 F.2d 364 (7th Cir.1993). In *Shaw*, the Seventh Circuit held that a plaintiff who challenged the amount in controversy for the first time on appeal during oral argument was deemed to have "conceded that his claim is worth more than $50,000 [ ] by not contesting removal when the motion was originally made, and by jurisdictional statements to this Court in his first brief." 994 F.2d at 367–68. Crucial to the majority's decision in *Shaw* was plaintiff's jurisdictional statement and opening brief to the court that "stated blithely" that both the citizenship and amount in controversy requirements of diversity jurisdiction were satisfied. *Id.* at 366. Indeed, in *Shaw*, it was only after questioning from the panel at oral argument that plaintiff retracted his prior assertions that the amount in controversy exceeded the $50,000 minimum and "took up the jurisdictional issue with a vengeance ... that his complaint [was] worth less than the $50,000 threshold." *Id.* The court reasoned that to allow a plaintiff to " '*reduce* the amount of his demand to defeat federal jurisdiction,' " no matter how *bona fide* his original demand in state court, would render a defendant's statutory right to removal " 'subject to the plaintiff's caprice.' " *Id.* at 368 (emphasis added) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294, 58 S.Ct. 586, 592, 82 L.Ed. 845 (1938)). Accordingly, the court held that the plaintiff's posturing in *Shaw* constituted a concession that the amount in controversy exceeded $50,000.

As a preliminary matter, we note that the waiver approach taken in *Shaw* was not unanimously endorsed by the panel. *See* 994 F.2d at 372 (Shadur, *J.*, dissenting) (majority's holding that plaintiff waived right to challenge amount in controversy "has done violence ... to one or more of the most fundamental principles of federal jurisdiction"). Nor do any of our cases indicate

support for its application in this Circuit. We need not speculate on whether we would follow *Shaw* if plaintiff's litigation conduct was as egregious as that in *Shaw*. It was not.

This is not an action primarily seeking damages for a personal injury. Rather, the Union seeks injunctive relief to vindicate its alleged state constitutional right to picket at a privately owned shopping center. Any damages that might be awarded, would, in all probability, be the expenses incurred by the Union's being forced to use alternative communication modes for its organizing drive. The value of those collateral damages would appear, at least for diversity jurisdictional purposes, relatively easy for defendants to ascertain and difficult for the Union to manipulate.

Unlike *Shaw*, moreover, the Union has never conceded in any court that the amount in controversy exceeded the jurisdictional minimum. Nor can the Union's posture be characterized as taking one position on a jurisdictional fact at one point in the litigation and taking a contrary position as to that fact at a different stage or in related litigation. *Cf., e.g., Roth v. McAllister Bros., Inc.*, 316 F.2d 143, 144–45 (2d Cir.1963) (defendant estopped from challenging award on jurisdictional ground that plaintiff was not a seaman where it successfully dismissed plaintiff's workers' compensation claim by arguing plaintiff was a seaman whose only remedy lay under federal law). We find nothing in the record, moreover, to suggest that the Union manipulated the amount in controversy so as to defeat federal jurisdiction. Accordingly, there is no basis to justify a holding that the Union waived its right to challenge the amount in controversy on appeal.

#### b. *Pleadings*

■ Having concluded that the Union has not waived its right to challenge defendants' assertion that the amount in controversy exceeds the jurisdictional minimum, we proceed to consider defendants' argument that the pleadings establish that the amount in controversy exceeds $50,000 in this case. To that end, it bears repeating that "[a] party invoking the jurisdiction of the federal court

has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994). Where, as here, jurisdictional facts are challenged, the party asserting jurisdiction must support those facts with "competent proof" and "justify [its] allegations by a preponderance of evidence." *McNutt*, 298 U.S. at 189. Here, that burden falls to defendants and has not been met.

A review of the pleadings in this case fails to satisfy us that the required minimum amount in controversy exists. The complaint makes clear that the Union seeks to vindicate an alleged state constitutional right of free speech. In that sense, the Union's claim is essentially one for injunctive relief. Admittedly, the Union's prayer of relief, in addition to requesting an injunction on the picketing ban at the Mall, asks for "such other relief at *law* or in equity as is fair and just." (emphasis added). To the extent that this prayer may be read as seeking damages, however, the pleadings themselves provide no reliable indication of the specific amount, *if any,* in damages claimed by the Union. Indeed, the only reference to any amount in controversy we find in the record is the Union's boilerplate demand statement, as required by Connecticut state court procedure in all actions, whether legal or equitable, that it seeks relief in excess of $15,000. Such a boilerplate demand statement setting forth an open-ended demand for an amount in excess of $15,000, without more, falls well short of the type of proof we require from defendants to establish that the $50,000 amount in controversy requirement is met in an action seeking primarily injunctive relief. In keeping with the established view that "plaintiff is the master of [its] claim" whose monetary demand is to be accorded deference, *see* 14A Wright & Miller § 3702, at 22–23 & n. 15 (and cases cited therein), we conclude that the pleadings alone are insufficient to establish that the amount in controversy exceeds $50,000 in this case.

Where the pleadings themselves are inconclusive as to the amount in controversy, however, federal courts may look outside those pleadings to other evidence in the record. *See Land v. Dollar*, 330 U.S. 731, 735 & n. 4, 67 S.Ct. 1009, 1011 & n. 4, 91 L.Ed. 1209 (1947); *Antares Aircraft v. Federal Republic of Nigeria*, 948 F.2d 90, 96 (2d Cir.1991), *vacated on other grounds*, —— U.S. ——, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992). To that end, defendants offer us *United Food and Commercial Workers Union, Local 919 v. Lechmere, Inc.*, Civil No. H–87–642 (D.Conn. Dec. 1, 1987), slip op. at 4–5 (denying plaintiff's motion to remand action for injunctive relief seeking to vindicate free speech right under state constitution where affidavits indicated that plaintiff used more expensive forms of communication in lieu of prohibited speech activity thereby creating the possibility that damages might exceed statutory minimum). Relying on *Lechmere,* defendants posit that as a result of the picketing ban, the Union has been forced to utilize more expensive communication modes such as radio and newspaper advertisements to carry out its organizing campaign. Defendants argue that were the Union to prevail on its free speech claim it would be entitled to recover costs associated with the more expensive communication which, in turn, would entitle the Union to damages that might exceed the jurisdictional minimum.

Defendants' reliance on *Lechmere,* however, while providing a helpful example of how a court might determine the amount in controversy in an action seeking to vindicate a free speech right through injunctive relief, is not dispositive of whether the amount in controversy requirement is satisfied in this particular case. As noted above, *Lechmere* involved a free speech claim virtually identical to the Union's in this case. After having its case removed to federal court, the plaintiff union in *Lechmere* filed a motion to remand to state court on the ground that the defendant had failed to establish the requisite amount in controversy to confer diversity jurisdiction. In considering the issue, however, the district court relied heavily on an affidavit submitted by the defendant that the plaintiff's resorting "to alternative methods of communicating with defendant's employees, to wit, newspaper advertisements" cost the plaintiff an estimated $22,982.40 and "may well have reached $51,000." *Id.* at 4.

The district court found that through the submission of this affidavit the "defendant has shown a potential recovery of damages by plaintiff, in the form of expenses incurred in the effort to overcome defendant's continued alleged refusal to comply with state law, in excess of $10,000," the prescribed jurisdictional minimum at the time of the action. *Id.*

By contrast, this record contains no supplementary submissions or estimates of what costs were incurred by the Union as the result of its resorting to alternative methods for communicating with Filene's employees. We have nothing before us that indicates whether the Union has engaged in alternative communications, let alone the nature, amount, and cost of such communication modes. Furthermore, any attempt on our part to put a monetary value on the right of association and speech itself would be purely speculative on this record. Thus, *Lechmere,* rather than supporting defendants' amount in controversy claim, underscores our concern that the record, at least as it has developed to this point in the proceedings, is inconclusive and fails to establish to a reasonable probability that the amount in controversy exceeds the statutory minimum in this case.

The lack of a developed record as to the amount in controversy cannot be laid solely at the feet of the defendants in this case. Clearly, had the Union challenged the amount in controversy in the traditional manner available to it in the district court, *i.e.,* had the Union filed a timely motion to remand pursuant to 28 U.S.C. § 1447(c), the parties, under the direction of the district court, would have had an opportunity to supplement the record to allow for an informed decision on the issue. It is only fair, therefore, that the issue be remanded to the district court to allow the parties to submit evidence on the amount in controversy and to give defendants an opportunity to meet their burden as to this requirement of diversity jurisdiction as well. *See Georgiades v. Martin–Trigona,* 729 F.2d 831, 833–34 (D.C.Cir. 1984) (remand required for additional factual determinations as to whether claims were aggregated to meet minimum amount in controversy requirement); *see also United*

*States ex rel. Mississippi Road Supply Co. v. H.R. Morgan, Inc.,* 528 F.2d 986, 987 (5th Cir.1976) (per curiam) (remanding jurisdictional issue for reconsideration in light of development of factual record on remand); *cf. Lupo v. Human Affairs Int'l,* 28 F.3d 269, 273–74 (2d Cir.1994) (where defendant raises diversity jurisdiction for the first time on appeal as alternative basis for jurisdiction after failure "to assert any amount in controversy or even raise the issue of diversity jurisdiction" in its notice of removal, diversity jurisdiction will be deemed to be lacking and defendant is not entitled to have issue remanded for reconsideration by district court on a supplemental record).

## B. *Federal Question Jurisdiction*

■ In addition to diversity jurisdiction, the notice of removal avers that federal question jurisdiction exists in this case. Specifically, the notice of removal asserts that the Union's state law free speech claim is "preempted by [ ] the National Labor Relations Act, 29 U.S.C. § 141, *et seq.*"

It is unclear on this appeal, however, whether defendants have abandoned their preemption claim. For example, in its brief, Meriden Square asserts that both itself *and* May "rest solely on the clear diversity basis for federal jurisdiction and do not assert the existence of a federal question." May, on the other hand, while not addressing the jurisdictional issue directly, asserts in its brief that even if diversity jurisdiction were found to be lacking, we nevertheless should dismiss the complaint because state court jurisdiction is preempted by the NLRA. Furthermore, although defendant May raised the preemption issue in its motion to dismiss before the district court, the district court never considered the issue. Thus, at best, the preemption issue is before us only cursorily, and at worst, defendants have staked out confused and contradictory positions as to the federal question basis for removal.

While the law makes clear that we retain the ability to address a theory of the case not considered below in certain cases, *see Thompson,* 15 F.3d at 248–49 (considering theory of standing on appeal that was not specifically raised in district court); *Poloron*

*Prods., Inc. v. Lybrand Ross Bros. & Montgomery,* 534 F.2d 1012, 1018 (2d Cir.1976), our "preferred practice ... is to remand the issue for consideration by the district court in the first instance where, as here, 'such a theory has been briefed and argued only cursorily in this Court.'" *Thompson,* 15 F.3d at 253 (quoting *Poloron Prods.,* 534 F.2d at 1018). Remand, moreover, is particularly appropriate here where, despite the assertion of federal question jurisdiction in the notice of removal, the district court never considered the preemption issue and the issue has been given a somewhat cursory and confused treatment on appeal. Accordingly, we remand the issue of federal question jurisdiction to the district court for consideration in the first instance.

C. *Remand*

As a final matter, it warrants mentioning that we agree with the district court that the Union has failed to state a claim under the current state of Connecticut law. *See Cologne,* 192 Conn. at 63, 66, 469 A.2d 1201. Thus, if the district court determines that federal jurisdiction exists over this case, the judgment dismissing the action on the merits under Fed.R.Civ.P. 12(b)(6) for failure to state a claim should be reinstated. Similarly, if the district court concludes that the Union's claim is preempted by the NLRA, it should dismiss the action. Conversely, if it determines that it lacks subject matter jurisdiction, the district court must then consider whether the law requires remand to state court pursuant to 28 U.S.C. § 1447(c) or whether it may dismiss the action altogether pursuant to Fed.R.Civ.P. 12(b)(1).

CONCLUSION

For the reasons stated above, we vacate the judgment of the district court dismissing the Union's action pursuant to Fed.R.Civ.P. 12(b)(6) and remand the case to the district court for a determination of whether it has subject matter jurisdiction over this action pursuant to either 28 U.S.C. §§ 1331 or 1332.

The parties shall bear their own costs.