**Gertrude VERMANDE and Herman Vaneck, Plaintiffs,**

v.

**HYUNDAI MOTOR AMERICA, INC., et al., Defendants.**

**No. 3:04CV1154 (MRK).**

United States District Court, D. Connecticut.

Dec. 28, 2004.

Gertrude Vermande, East Haven, CT, pro se.

Herman Vaneck, Ivoryton, CT, pro se.

Adam J. Cohen, Bridgeport, CT, for Defendants.

## MEMORANDUM OF DECISION

KRAVITZ, District Judge.

This case arises out of Defendants' repossession of Plaintiffs' Hyundai automobile, which (when new) was valued at *approximately* $23,289.00, according to Defendants, or *at most* $23,889.00, according to Plaintiffs. *See* Defs.' Reply to Pls.' Objections to Removal [doc. # 12] at 2; Pls.' Motion to Remand [doc. # 9] at 1. Plaintiffs, acting *pro se*, originally filed this lawsuit in state court on June 3, 2004, asserting two claims—"detrimental reliance" and "breach of contract." After approximately six weeks of proceedings in state court, Defendants removed this case to federal court on July 14, 2004, based on diversity of citizenship under 28 U.S.C. § 1332.

Currently pending before the Court are Plaintiffs' Motion to Remand [doc. # 9] and Motion for Sanctions [doc. # 10]. This Court notes, and Plaintiffs do not dispute, that there is complete diversity because Plaintiffs are citizens of Connecticut and Defendants are citizens of California. However, Plaintiffs assert that this Court lacks subject matter jurisdiction under 28 U.S.C. § 1332 because the amount in controversy does not exceed $75,000. Accordingly, Plaintiffs seek a remand of this action to state court. Plaintiffs further ask this Court to sanction Defendants for improvidently removing this action to federal court and for an improper certification. For the reasons stated below, the Court DENIES Plaintiffs' Motion to Remand [doc. # 9] and Plaintiffs' Motion for Sanctions [doc. # 10].

### I.

Because Defendants removed this action from state court, they bear the burden of " 'proving that it appears to a reasonable probability that the claim is in

excess of the statutory jurisdictional amount.'" *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir.2000) (quoting *United Food & Commercial Workers Union, Local 919 v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 305 (2d Cir.1994)); *see also California Public Employees' Retirement System v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004); *United Food*, 30 F.3d at 301 (2d Cir.1994). If, as here, the jurisdictional facts are challenged, "the party asserting jurisdiction must support those facts with 'competent proof' and 'justify [its] allegations by a preponderance of evidence.'" *United Food*, 30 F.3d at 305 (quoting *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)). Furthermore, the Second Circuit has repeatedly cautioned that "[i]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Lupo v. Human Affairs Intern., Inc.*, 28 F.3d 269, 274 (2d Cir.1994); *see also Somlyo v. J. Lu–Rob Enterprises, Inc.*, 932 F.2d 1043, 1045–46 (2d Cir.1991) (same).

## A.

▉ In keeping with the established view that "plaintiff is the master of his or her claim," a district court will ordinarily respect a plaintiff's deliberate choices in drafting the complaint when determining the amount in controversy. Charles A. Wright *et al.*, 14B *Federal Practice & Procedure: Jurisdiction 3d* § 3702, at 46 & n. 19 (citing cases); *see also United Food*, 30 F.3d at 305. Applying that principle in this case is complex for two reasons.

First, Connecticut does not require a plaintiff to state the precise amount sought in the litigation but only requires a plaintiff to allege whether more than $15,000 is in dispute. *See* Conn. Gen.Stat. § 52–91; *Southington '84 Associates v. Silver Dollar Stores, Inc.*, 237 Conn. 758, 765, 678 A.2d 968 (1996) ("[T]he statement contemplated by the amended § 52–91 does not require the plaintiff to state the exact amount being sought."). Here, the Plaintiffs' prayer for relief (in addition to requesting a temporary injunction prohibiting the defendants from disposing of the Hyundai automobile) merely asks for "money damages ... costs ... [and] such other and further relief as in law or in equity may arise, in the circumstances that pertain." Complaint attached to Defs.' Notice of Removal [doc. # 1], at 13. And in accordance with Connecticut practice, Plaintiffs' "Statement of Amount in Demand" simply states: "Pursuant to Conn. Gen.Stat. § 52–91 ... the Plaintiffs state that the amount, legal interest, or property demand is fifteen thousand dollars or more, exclusive of interest and costs." *See id.* Therefore, on its face, Plaintiffs' Complaint does not indicate the amount in controversy.

Second, plaintiffs are proceeding *pro se.* As the Second Circuit has repeatedly cautioned, "[s]ince most *pro se* plaintiffs lack familiarity with the formalities of pleading requirements, [courts] must construe *pro se* complaints liberally, applying a more flexible standard to evaluate their sufficiency than we would when reviewing a complaint submitted by counsel." *Taylor v. Vermont Dept. of Educ.*, 313 F.3d 768, 776 (2d Cir.2002). The Court, therefore, must "interpret [Plaintiffs' Complaint] to raise the strongest arguments [it] suggest[s]." *Wright v. C.I.R.*, 381 F.3d 41, 44 (2d Cir.2004). At its core, it appears that this dispute concerns a financing contract for the purchase of an automobile, which all parties admit was worth no more than $24,000, far below the jurisdictional prerequisite of $75,000. Yet, because Plaintiffs are proceeding *pro se* and therefore lack familiarity with pleading require-

ments, a closer inspection of the Plaintiffs' claims is warranted.

There is no reason to construe Plaintiffs' Count Two—labeled "breach of contract"—as anything other than as labeled. In Connecticut, "[t]he general rule of damages in a breach of contract action is that the award should place the injured party in the same position as he would have been in had the contract been performed." *O'Hara v. State*, 218 Conn. 628, 642, 590 A.2d 948 (1991). Non-economic damages for emotional distress, humiliation, shame, personal indignity, embarrassment, fear, anxiety and/or anguish, among other things, which a plaintiff has suffered or may with reasonable certainty be expected to suffer in the future, are not recoverable in contract. *See, e.g.*, Restatement (Second) Contracts § 353, cmt. a ("Damages for emotional disturbance are not ordinarily allowed. Even if they are foreseeable, they are often particularly difficult to establish and to measure."); Dan D. Dobbs, 3 *Law of Remedies* § 12.5(1) (2d ed.1993), at 107–08 ("The general rule is that no award may be made for emotional or mental distress resulting from contract breach alone."). Since the value of the Hyundai is no more than $24,000, there is no reasonable probability that Plaintiffs will recover more than the jurisdictional minimum of $75,000 on Count Two of their Complaint.

Count One—labeled "detrimental reliance"—is less clear, however. Count One can be read to assert at least two plausible legal theories. First, it may state a quasi-contract claim for promissory estoppel, alleging that Plaintiffs detrimentally relied on Defendants' promises that the Defendants should have reasonably expected to induce action or forbearance on the part of the Plaintiffs. *See, e.g.*, Complaint attached to Defs.' Notice of Removal [doc. # 1], at ¶¶ 11, 15; *see generally Stewart v. Cendant Mobility Services Corp.*, 267 Conn. 96, 104–05, 837 A.2d 736 (2003) (" 'A

fundamental element of promissory estoppel, therefore, is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance.' ") (quoting *D'Ulisse–Cupo v. Board of Directors of Notre Dame High School*, 202 Conn. 206, 213, 520 A.2d 217 (1987)). Alternatively, Count One can be read to assert a tort claim for, for example, fraudulent or negligent misrepresentation, alleging, as it does, that Defendants either knowingly or negligently supplied false information to Plaintiffs in the course of their business transactions, upon which Plaintiffs relied to their detriment. *See, e.g.*, Complaint attached to Defs.' Notice of Removal [doc. # 1], at ¶¶ 8, 9, 10, 15; *see generally Suffield Develop. Assoc. Ltd. Partnership v. National Loan Investors, L.P.*, 260 Conn. 766, 777–78, 802 A.2d 44 (2002) ("Under a fraud claim . . ., the party to whom the false representation was made claims to have relied on that representation and to have suffered harm as a result of the reliance.") (internal quotation and citation omitted); *Williams Ford, Inc. v. Hartford Courant Co.*, 232 Conn. 559, 575, 657 A.2d 212 (1995) ("This court has long recognized liability for negligent misrepresentation. We have held that even an innocent misrepresentation of fact may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth.").

Moreover, if the requirement that a court must liberally construe a *pro se* plaintiff's complaint is to be taken seriously, the Court could conceive of other torts encompassed by Count One based on the factual description the Plaintiffs provide of their interactions with the Defendants. In fact, Count One explicitly raises issues of Defendants' breach of their duty of care—which implies a negligence claim. *See* Complaint attached to Defs.' Notice of Removal [doc. # 1], at ¶ 20 ("[D]efendants hired unknown ruffians to with and by

strong hand seize the subject automobile and remove same surreptitiously from the possession of the plaintiffs. In so doing, defendants failed to exercise due care to protect the plaintiffs from harm and injury, failed and refused to respond at all to multiple inquiries made to resolve any matters in controversy, failed to conduct themselves in a reasonable manner, and acted against plaintiffs with malice and with spite."). Count One also appears to raise issues that sound in negligent or intentional infliction of emotional distress. *See id.* at ¶ 20(h)-(i) ("[D]eliberately and with malice aforethought leading the plaintiffs to the erroneous conclusion that the subject automobile was stolen by anonymous thieves, in the full knowledge that plaintiffs would expend funds to both remit for auto rentals and for a replacement vehicle, to their detriment and loss; ... [and] conducted all of the above acts with the particular knowledge that [Plaintiff Vermande] was age 89, and the husband of [Plaintiff Vermande] was 92, and the subject automobile was specifically provided to them for the purposes of ensuring mobility to and access for transport to medical services, including physicians and hospitals, together with mobility for obtaining necessities of life including groceries and access to Church for spiritual comfort in the twilight years of [Plaintiff Vermande] and her husband.").

Accordingly, construing Plaintiffs' Complaint "to raise the strongest arguments it suggests," *Wright,* 381 F.3d at 44, the Court concludes that Count One asserts a tort claim for fraudulent or negligent misrepresentation and/or intentional or negligent infliction of emotional distress. As such, Plaintiffs would not necessarily be limited to economic damages (as they would be on Count Two), but they could receive non-economic, tort damages for the emotional distress alleged in the Complaint as well as for other consequential injuries caused by Defendants' alleged conduct (such as the harm to Plaintiffs' allegedly damaged credit reports, which is also suggested by the allegations of the Complaint, and the loss of personal items that are alleged to have been stolen when Defendants repossessed Plaintiffs' Hyundai).[1] *See, e.g., Kilduff v. Adams, Inc.,* 219 Conn. 314, 324, 593 A.2d 478 (1991) ("[W]e concur with those jurisdictions that allow the recovery of emotional damages that are the natural and proximate result of fraud."); *Opielowski–Brouwer v. Haddam Hills Academy,* No. CV990087906S, 2002 WL 180974, at *7 (Conn.Super. Jan. 11, 2002) (upholding award of non-economic damages as a part of a negligent misrepresentation claim). While, as noted previously, the Complaint itself does not assign an economic value to any of Plaintiffs' alleged damages, it is certainly possible for Plaintiffs to recover far more than the underlying contract-based damages of $24,000 based on the allegations of the Complaint.

### B.

■ Where, as here, the pleadings themselves are inconclusive as to the amount in controversy, "federal courts may look outside those pleadings to other evidence in the record." *United Food,* 30 F.3d at 305. In particular, Defendants rely on a letter sent by facsimile by Plaintiff Vaneck to Defendants on July 8, 2004. *See* Attachment to Defs.' Reply to Pls.' Objections to Removal [doc. # 12]. Accord-

---

1. *See* Complaint attached to Defs.' Notice of Removal [doc. # 1], at ¶ 17–18 ("Concurrent with the above events, the Junior Plaintiff discovered that defendant Hyundai Finance was issuing certain "reports' [sic] to credit bureaus that [Plaintiff Vaneck] was delinquent.... [Plaintiff Vaneck] sent a letter ... Defendant Hyundai Finance chose not to respond.").

ing to Defendants, the July 8 facsimile reveals that Plaintiffs believe that their damages exceed $154,182—well more than the required amount in controversy. *See* Defs.' Reply to Pls.' Objections to Removal [doc. # 12], at 2. Specifically, the July 8 facsimile makes a "global settlement offer" to Defendants and assigns "values" to the damages that Plaintiffs have sustained as follows: (1) a "lump sum of $100,000" for the "grief" that Defendants' reports to credit bureaus "has caused, and predictably will continue to cause" Plaintiffs; (2) $4,182 for the denial of a promotional coupon (ostensibly for another Hyundai automobile); and (3) $50,000 for the "globality of the other claims as generally outlined ... in my previous settlement letter and in our discussions." Attachment to Defs.' Reply to Pls.' Objections to Removal [doc. # 12]. The letter also states that "[s]ince I am left to my own devices to replace my other automobile, the costs involved have to be factored in to my global settlement offer to you today," and that Defendants' failure to correct reports made to various credit bureaus "is causing me considerable grief." *Id.*

For several reasons, Plaintiffs contend that Defendants cannot rely on the July 8 facsimile. Plaintiffs first assert that the Court cannot consider the July 8 facsimile because it was sent as part of ongoing settlement negotiations and therefore is inadmissible under Rule 408 of the *Federal Rules of Evidence. See* Pls.' Prelim. Obj. to Removal [doc. # 8], at 5. Plaintiffs also argue that because the parties' settlement negotiations were ongoing, the July 8 fac-

simile should not be considered a "final" measure of the amount in controversy and that their July 12, 2004 Offer for Judgment (which offered to take a judgment of $54,182) superseded their July 8 facsimile and demonstrates that the "true" measure of the amount in controversy is less than $75,000. *See* Pls.' Reply Mem. to Defs.' Response to Show Cause Order [doc. # 15], at 3–4; Attachment to Pls.' Objection to Removal [doc. # 8] (Offer of Judgment).

Before addressing Plaintiffs' Rule 408 argument, the Court notes that it is not necessarily limited to the parties' pleadings when determining the amount in controversy. In fact, the removal statute expressly states that "a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or *other paper* from which it may first be ascertained that the case is one which is or has become removable ..." 28 U.S.C. § 1446(b) (emphasis added).[2] Although the Second Circuit has not addressed this issue, most courts have held—and this Court agrees—that § 1446(b) is not limited to papers filed in the litigation and that the reference to "other paper" in the statute can include pre-removal correspondence between the parties, including, as here, settlement offers. *See, e.g., Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir.2002) ("A settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim.");

---

**2.** Plaintiffs' July 8 facsimile is relevant not only to the amount in controversy but also to the timeliness of Defendants' removal. Defendants' Notice of Removal was filed July 14, 2004 and would have been untimely under the first paragraph of § 1446(b) since Defendants were served with Plaintiffs' Complaint on June 4, 2004. *See* Attachments to Defs.' Notice of Removal [doc. # 1]. However, be-

cause the July 8 facsimile settlement offer constitutes an "other paper" from which Defendants first ascertained that the case was removable, Defendants were permitted under the second paragraph of § 1446(b) to remove this action within 30 days of receipt of the facsimile so long as the case was removed within a year of commencement of the action. *See* Notice of Removal [doc. # 1], at 2.

*Addo v. Globe Life and Acc. Ins. Co.*, 230 F.3d 759, 762 (5th Cir.2000) ("[Plaintiff's] post-complaint demand letter was an 'other paper' under § 1446(b) which gave [the Defendant] notice that the case was removable."); *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 428–30 (7th Cir.1997) (consulting plaintiff's settlement offer to determine "plaintiff's assessment of the value of her case"); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir.1994) ("While [Plaintiff's] settlement offer, by itself, may not be determinative, it counts for something."); *Yarnevic v. Brink's, Inc.*, 102 F.3d 753, 755 (4th Cir. 1996) ("The 'motion, order or other paper' requirement is broad enough to include any information received by the defendant whether communicated in a formal or informal manner.") (internal quotation and citation omitted); *Dozier v. Kentucky Finance Co., Inc.*, 319 F.Supp.2d 716, 718 (S.D.Miss.2003) ("[A] settlement letter can be sufficient to constitute an 'other paper' which makes a case removable where the settlement request demands an amount over the jurisdictional minimum."); *Grunberger Jewelers v. Leone*, No. 3:03CV647(CFD), 2003 WL 21488752, at *2 (D.Conn. June 25, 2003) (demand letter offering $172,000 to settle the case constitutes "other paper" for purposes of § 1446(b)); *Archer v. Kelly*, 271 F.Supp.2d 1320, 1323 (N.D.Okla.2003) ("Defendants' rejection of a settlement offer does not foreclose their ability to use the offer itself as an estimate of the value plaintiff attributes to the claim and thus, as a benchmark for their assertion of the amount in contro-

versy in a notice of removal."); *Polk v. Sentry Ins.*, 129 F.Supp.2d 975, 978 (S.D.Miss.2000) ("[Section] 1446(b) is not restricted solely to papers filed in the case.... [A] demand letter under proper circumstances may be accorded 'other paper' status under § 1446(b).") (internal quotations and citations omitted); *Rahwar v. Nootz*, 863 F.Supp. 191, 192 (D.N.J. 1994) ("Correspondence between parties, similar to the statement of damages letter at issue in this case, specifically has been held sufficient to support removal."); *but see Avco Corp. (Lycoming Division) v. Local 1010 of Intern. Union (Uaw AFL–CIO)*, 287 F.Supp. 132, 133 (D.Conn.1968) ("The Court believes, that [the "other paper" provision in 28 U.S.C. § 1446(b) ] relates only to *papers filed in the action itself* which alter or clarify the stated claim so as to reveal for the first time that a federal cause of action is stated.") (emphasis added).

Therefore, the Court can consider the July 8 facsimile in determining the propriety of Defendants' removal of this action under § 1446(b), unless Rule 408 of the *Federal Rules of Evidence* prohibits the Court from doing so. On its face, the language of Rule 408 might be read to bar a court from consulting a settlement letter for purposes of determining the amount in controversy.[3] For the Rule makes settlement proposals inadmissible not only "to prove liability for or invalidity of the claim" but also "its amount." Fed.R.Evid. 408.

---

**3.** Rule 408 of the *Federal Rules of Evidence* states, in relevant part:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of

conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose.
Fed.R.Evid. 408.

■ However, most courts have sensibly concluded that Rule 408 does not prevent them from considering a settlement demand for purposes of assessing the amount in controversy. *See, e.g., Cohn,* 281 F.3d at 840 n. 3 ("We reject the argument that [Rule] 408 prohibits the use of settlement offers in determining the amount in controversy. Rule 408 disallows use of settlement letters to prove 'liability for or invalidity of the claim or its amount.' We agree with the district court that Rule 408 is inapplicable because this evidence was not offered to establish the amount of [Defendant's] liability, but merely to indicate [Plaintiff's] assessment of the value of the trademark."); *Archer,* 271 F.Supp.2d at 1322–23 (settlement demand letter need not be excluded under Rule 408 if offered for another purpose, and finding that "another acceptable purpose is to show that the amount in controversy exceeds $75,000 and, together with complete diversity of the parties, to establish removal jurisdiction.... [T]he letter is not being offered as an admission of liability or the amount of liability. Further, the purpose of Fed. R.Evid. 408, to encourage settlements, is not undermined by use of a demand letter in a notice of removal."); *but see King v. Wal–Mart Stores, Inc.,* 940 F.Supp. 213, 217 n. 1 (S.D.Ind.1996) (questioning the use of a settlement demand to prove amount in controversy, stating "it is clear that evidence of settlement discussions is 'not admissible to prove ... [the] invalidity of [a] claim or its *amount.'* ") (emphasis in original) (quoting Fed.R.Evid. 408).

Here, the July 8 facsimile is not offered for the purpose of establishing or fixing the amount of Defendants' liability or even the amount of Plaintiffs' damages but rather merely to provide some evidence of the sums that are in dispute in this action. While there is, admittedly, some risk that allowing courts to consider settlement offers when assessing the amount in controversy may discourage parties from making settlement offers during the first year of a case,[4] on balance, the Court believes that the underlying rationale for Rule 408 cited in the Committee Notes—the limited relevance of such evidence and the public policy of encouraging settlements—is not terribly offended by considering the July 8 facsimile (or for that matter the Offer of Judgment)[5] for the limited purpose of determining the amount in controversy when the pleadings themselves are inconclusive on that subject.

■ That said, the Court recognizes that it must exercise considerable caution in considering such evidence. A settlement offer should not necessarily be determinative of the amount in controversy. Instead, the Court agrees with those courts that have held that a settlement letter is only one factor to consider in assessing the amount in controversy and that courts must consider the context in which such a settlement demand was made. *See, e.g., Addo,* 230 F.3d at 762 (Wiener, J., dissenting) (courts must consider the "full context" of a settlement offer); *Doughty v. Hyster New England, Inc.,* 344 F.Supp.2d 217, 219 (D.Me.2004) ("Although some courts outside of this circuit have treated a settlement letter as independently sufficient to establish the amount in controversy, a settlement demand is not the sole determinative factor to consider when assessing the jurisdictional amount in controversy. The more

---

4. Under 28 U.S.C. § 1446(b) "a case may not be removed on the basis of [diversity jurisdiction] more than 1 year after commencement of the action."

5. An offer of judgment is merely a formal settlement offer. *See* Fed.R.Evid. 408, Advisory Comm. Note (stating that the "same policy underlies" Rule 408 as underlies Rule 68 governing offers of judgment).

appropriate measure is the litigation value of the case, an amount arrived at by drawing all reasonable inferences in favor of the Plaintiff's Complaint.") (internal citation omitted); *Corlew v. Denny's Restaurant, Inc.*, 983 F.Supp. 878, 880 (E.D.Mo.1997) ("[T]he mere existence of a settlement demand is not dispositive of the issue of the jurisdictional amount."); *Saunders v. Rider*, 805 F.Supp. 17, 19 (E.D.La.1992) (timing of demand letter is important; a settlement demand made shortly after removal is not evidence of amount in controversy at time of removal). Courts should be alert to the fact that settlement offers can often be wildly unrealistic and constitute mere puffery or posturing rather than a fair or realistic appraisal of a party's damages. *Gwyn v. Wal–Mart Stores, Inc.*, 955 F.Supp. 44, 46 (M.D.N.C.1996) ("In trying to settle a claim, counsel naturally will try to inflate its value. Such 'puffing' cannot be taken as evidence of the amount in controversy."); *Standridge v. Wal–Mart Stores, Inc.*, 945 F.Supp. 252, 256–57 (N.D.Ga.1996) (demand letter sent two weeks before plaintiff filed her case was "nothing more than posturing by plaintiff's counsel for settlement purposes and cannot be considered a reliable indicator of the damages plaintiff is seeking.").

■ Furthermore, contrary to Plaintiffs' claim, a settlement demand or even an offer of judgment is not necessarily a fixed ceiling on a plaintiff's damages. As other courts have observed, basic economics and practical experience teaches that settlement offers are often intentionally lower than the litigation value of the underlying case, in an effort to induce the parties to settle in order to avoid the expenses and risk of trial. *See, e.g., Carnahan v. Southern Pac. R.R. Trans. Co.*, 914 F.Supp. 1430, 1431–32 (E.D.Tex.1995) ("As economics help us understand, the rational amount for which one is willing to settle is generally less than the maximum jury award that is reasonably plausible at the

conclusion of a successful trial."); *Mullins v. Harry's Mobile Homes, Inc.*, 861 F.Supp. 22, 24 (S.D.W.Va.1994) ("In order to allow for the hazards and costs of litigation, settlement offers routinely represent a discount from the damages plaintiffs will attempt to prove at trial."). Since a settlement offer is not an accurate measure of the litigation value of a claim—and is often considerably lower the Court cannot, as Plaintiffs urge, construe their Offer for Judgment as establishing the ceiling for the actual value of their claims. *See, e.g., Jackson v. American Bankers Ins. Co. of Fla.*, 976 F.Supp. 1450, 1454 (S.D.Ala.1997) ("[I]t is not the settlement value of a case that determines whether the jurisdictional amount is in controversy. The appropriate measure is the litigation value of the case assuming that the allegations of the complaint are true and assuming a jury returns a verdict for the plaintiff on all claims made in the complaint.").

■ Though a close call, faced with the dilemma of how best to liberally construe the *pro se* Plaintiffs' pleadings and submissions and give appropriate weight to the strongest arguments they suggest, the Court concludes on the basis of all of the relevant evidence that Defendants have met their burden of establishing a "reasonable probability" that Plaintiffs' claims exceed the statutory jurisdictional amount of $75,000. *See Mehlenbacher*, 216 F.3d at 296. First, the Complaint, liberally construed, alleges that Defendants committed several torts and acted with "malice" and "spite" in inflicting a number of injuries upon Plaintiffs, including causing alleged emotional distress to elderly individuals and continuing damage to credit histories. Second, the Offer of Judgment, which sought over twice the contract value of the Hyundai, confirms that Plaintiffs are seeking tort as well as contract damages in this action. Third, there is a nexus between

the harms alleged in the Complaint and the items of damage for which Plaintiffs seek payment in their July 8 facsimile. Fourth and finally, while it remains to be seen what amount of damages, if any, Plaintiffs will be able to prove they are entitled to, the amounts sought in the July 8 facsimile do not appear to be grossly excessive or objectively unreasonable in light of the allegations of the Complaint. *See, e.g., Taylor v. Slatkin,* No. 3:02–CV–2404R, 2003 WL 21662825 (N.D.Tex. July 14, 2003) (*pro se* plaintiff demanded $300,000 for a $200 breach of contract claim). Therefore, Plaintiffs' Motion to Remand [doc. # 9] is DENIED.

## II.

Plaintiffs also move for sanctions [doc. # 10] under Rule 11 of the *Federal Rules of Civil Procedure* based on: (1) Defendants' alleged misconduct in filing of their Notice of Removal [doc. # 1]; and (2) Defendants' certification of an allegedly untruthful affidavit in said filing.

Defendants are correct that Plaintiffs have failed to comply with the requirements of Rule 11. Rule 11(c)(1)(A) states that a motion for sanctions "shall not be filed with or presented to the court unless, within 21 days after service of the motion ... the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." Fed. R.Civ.P. 11(c)(1)(A). Plaintiffs' first motion for Rule 11 sanctions was dated July 16, 2004 and Plaintiffs' second motion for sanctions was dated July 19, 2004. Both motions were filed with the Clerk of the Court on July 26, 2004 and consolidated under the same docket number [doc. # 10]. Neither motion was filed 21 days after service on Defendants, as required by Rule 11, and they are thus procedurally deficient. *See* Fed.R.Civ.P. 11(c)(1)(A); Defs.' Objection to Plaintiffs' Motion for Rule 11 Sanctions [doc. # 13], at 3; *see also Storey v. Cello Holdings, L.L.C.,* 347 F.3d 370,

389 (2d Cir.2003) ("This notice requirement [in Rule 11(c)(1)(A) ] permits the subjects of sanctions motions to confront their accuser and rebut the charges leveled against them in a pointed fashion. Moreover, when Rule 11 sanctions are initiated by the motion of a party, it gives the subject the opportunity to withdraw the potentially offending statements before the sanctions motion is officially filed."); *Hadges v. Yonkers Racing Corp.,* 48 F.3d 1320, 1328 (2d Cir.1995) (district court's imposition of sanctions was abuse of its discretion where party seeking sanctions did not comply with the procedural requirements of Rule 11).

Furthermore, the Court believes that Plaintiffs' charges of misconduct against Defendants are without merit. Contrary to Plaintiffs' claims, and as the Court has made clear in its discussion of Defendants' removal above, Defendants' legal claims in their Notice of Removal [doc. # 1] are "not so untenable as a matter of law to necessitate sanction. Nor [do] they constitute the type of abuse of the adversary system that Rule 11 was designed to guard against." *Salovaara v. Eckert,* 222 F.3d 19, 34 (2d Cir.2000); *see also Securities Indus. Ass'n v. Clarke,* 898 F.2d 318, 321 (2d Cir.1990) ("A distinction must be drawn between a position which is merely losing, and one which is both losing and sanctionable.") (internal quotation marks omitted). Furthermore, as to Plaintiffs' complaint regarding Defendant's affidavit of service, once Defendants were apprised of Plaintiffs' concerns, Defendants tendered a corrected Affidavit of Service of Notice by Mailing, which adequately addresses Plaintiffs' concern that Defendants' original affidavit was untruthful. *See* Defs.' Objection to Pls.' Motion for Rule 11 Sanctions [doc. # 13], at Ex. A. Therefore, because of its procedural and substantive deficiencies, Plaintiffs' Motion for Sanctions [doc. # 10] is DENIED.

## III.

In conclusion, the Court DENIES Plaintiffs' Motion to Remand [doc. # 9] and Plaintiffs' Motion for Sanctions [doc. # 10]. In accordance with Local Civil Rule 26(e), the parties shall confer for the purposes described in Rule 26(f) of the *Federal Rules of Civil Procedure* **by no later than January 21, 2005.** Within ten days thereafter, the parties shall jointly file with the Court a report on Form 26(f), which appears in the Appendix to the Local Civil Rules.

IT IS SO ORDERED.