**WESTMORELAND CAPITAL CORPO-RATION, Joseph M. Jayson and Judith P. Jayson, Petitioners–Appellants,**

v.

**George D. FINDLAY and John F. Joyce, Respondents–Appellees.**

No. 973, Docket 96-7257.

United States Court of Appeals, Second Circuit.

Argued Sept. 20, 1996.

Decided Nov. 7, 1996.

Robert J. Lane, Jr., Hodgson, Russ, Andrews, Woods & Goodyear, LLP, (Adam W. Perry, of counsel) Buffalo, NY, for Petitioners–Appellants.

Samuel H. Press, Portnow, Little & Cicchetti, P.C., Burlington, VT, for Respondents–Appellees.

Before MESKILL, WINTER and CABRANES, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

We are asked to decide whether a petition under the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.*, seeking to stay arbitration of claims that arise, in part, under the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78a *et seq.*, was properly dismissed by the United States District Court for the Western District of New York, for lack of subject matter jurisdiction. Because the FAA does not provide a basis for federal question jurisdiction under 28 U.S.C. § 1331, and because the petition does not allege an adequate independent basis for federal question or diversity jurisdiction, we hold that the district court properly dismissed appellants' petition to stay arbitration for lack of subject matter jurisdiction. Accordingly, we affirm the district court insofar as it dismissed the action for lack of a federal question.

## I. BACKGROUND

Petitioner Westmoreland Capital Corporation ("Westmoreland") is a New York corporation engaged in financial planning and investment counseling with its principal place of business in Getzville, New York. Petitioners Joseph M. and Mary P. Jayson (jointly, the "Jaysons") are the owners and operators of Westmoreland. Respondents George D. Findlay and John F. Joyce are elderly, retired individuals who in 1988 allegedly engaged Terry King, an employee of Westmoreland, to provide financial planning and advice. King was reportedly employed as a registered representative and account manager at Westmoreland from January 1988 through the fall of 1991.

King allegedly met with both Findlay and Joyce, who were not acquainted with each other, separately, at the Westmoreland offices, and proposed similar investment plans to both. On King's advice, Findlay and Joyce each allegedly invested money in a limited partnership run by the Jaysons, and a start-up corporation for which King was a principal promoter, officer and shareholder. Findlay made investments in these enterprises at various times between November 1988 and May 1990, in a total principal amount of $212,000, including a $26,000 personal loan to King. Joyce also made investments at various times between November 1988 and May 1990, in a total principal amount of $154,747.50, including an investment of $20,247.50 in a corporation of which King was allegedly an officer and a shareholder.

The stock of the two corporations in which the respondents invested is said to be worthless, the limited partnership is apparently not liquid or marketable, and King has failed

to repay the personal loan from Findlay. Findlay alleges that, as a result of King's actions, for which he claims Westmoreland and the Jaysons are responsible, he has lost his entire $212,000 investment. Joyce alleges that he has sustained losses of all but $2500 of his $152,747.50 investment.

Findlay and Joyce commenced a joint arbitration proceeding with the National Association of Securities Dealers, Inc. ("NASD") on September 27, 1994, alleging, *inter alia,* violations of the Exchange Act. Petitioners were served with a statement of claim notifying them of the NASD arbitration proceeding in February 1995. Petitioners answered the statement of claim on April 3, 1995. Petitioners filed their petition in the instant case on April 20, 1995, pursuant to § 4 of the FAA, seeking an order preliminarily and permanently enjoining the respondents from pursuing their NASD arbitration proceeding. Pursuant to 28 U.S.C. § 636(b)(1), all pretrial matters in the case, including dispositive motions, were referred to Magistrate Judge Foschio.

Petitioners contend that all of the respondents' arbitration claims against petitioners Joseph M. and Mary P. Jayson (jointly, the "Jaysons") and some of the arbitration claims against petitioner Westmoreland are time-barred under the three-year statute of limitations enunciated by the Supreme Court in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 111 S.Ct. 2773,

115 L.Ed.2d 321 (1991), with respect to claims brought under § 10(b) of the Exchange Act, 15 U.S.C. § 78j.[1] They claim that the remaining arbitration claims against Westmoreland are time-barred by the NASD Code of Arbitration Procedure ("NASD Code") § 15, which bars the arbitration of claims arising six years or more prior to the commencement of arbitration proceedings.[2] Respondents filed an answer and counterclaim petition to compel arbitration in which they denied the petitioners' claim that the district court had an independent basis for either diversity or federal question jurisdiction over the petitioners' claim.

However, rather than filing a simultaneous motion to dismiss the petitioners' claim for lack of subject matter jurisdiction, respondents filed a simultaneous motion to dismiss the petition under FED. R. CIV. P. 12(b)(6), on the grounds that the FAA does not authorize the court to stay the arbitration, and that the court lacks jurisdiction to enjoin an arbitration proceeding on statute of limitations grounds under Rule 15 of the NASD Code. Subsequently, petitioners filed a cross-motion for summary judgment requesting an order barring respondents from pursuing any claims in arbitration against Joseph Jayson or Judith Jayson and a permanent injunction barring respondents from pursuing any arbitration proceedings against Westmoreland based on any claims arising under the Exchange Act or any claims based on acts that occurred more than six years before

1. 15 U.S.C. § 78j provides in relevant part:
   It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange ... (b) [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
   The respondents claim that the Jaysons would be liable for the actions of King under 15 U.S.C. § 78j as "controlling persons" under 15 U.S.C. § 78t, which provides in relevant part that:
   (a) Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

2. NASD Code § 15 provides as follows:
   No dispute, claim, or controversy shall be eligible for submission to arbitration under this Code where six (6) years have elapsed from the occurrence or event giving rise to the act or dispute, claim or controversy. This section shall not extend applicable statutes of limitations, nor shall it apply to any case which is directed to arbitration by a court of competent jurisdiction.

the respondents commenced their NASD arbitration proceeding.

On February 14, 1996, the district court issued a decision and order dismissing the petition and the counterclaim on two alternate grounds. The district court decided *sua sponte* to dismiss the petition and counterclaim on the ground that the court did not have subject matter jurisdiction to hear the petition. In the alternative, the court stated that "if the court were to have subject matter jurisdiction," it would rule in favor of respondents on their counterclaim and therefore would dismiss the case and compel arbitration, allowing the arbitrator to determine issues of timeliness. The petitioners appeal from both of these rulings. All of the transactions at issue in this action occurred in New York. Westmoreland is a New York corporation, and all of the individual parties claim to be New York residents, although Joyce was served in Virginia where he is now living with his daughter. In addition, while Findlay and Joyce each agreed to retain King, there is no evidence in the record of any executed, written agreements between the parties. While the district court stated in its order that there is no evidence of any agreement to arbitrate any controversies, the respondents claim in their answer that there is indeed a written agreement for arbitration between petitioners and respondents. In any event, the parties agree that they are obligated to arbitrate any disputes, other than the allegedly time-barred claims at issue here, under the NASD Code by virtue of the petitioners' membership in the NASD.

## II. DISCUSSION

On appeal, the petitioners claim that (1) the district court erred in concluding that federal question jurisdiction was lacking, inasmuch as the petition arose under the FAA and the Exchange Act; and (2) the district court erred in concluding that the petition should be dismissed in any event because the

question of the timeliness of an arbitration claim is to be decided by the arbitrator and not the courts.

Because we find that federal question jurisdiction is lacking, and because the petitioners advance no other basis for the exercise of subject matter jurisdiction, we conclude that the district court properly dismissed both the petition and the counterclaim. We therefore need not address whether the district court properly found that the question of the timeliness of an arbitration petition is for the arbitrator, and not the courts, to decide.

We review the district court's dismissal of the petition for lack of subject matter jurisdiction *de novo. See Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians,* 94 F.3d 747, 751 (2d Cir. 1996); *Malik v. Meissner,* 82 F.3d 560, 562 (2d Cir.1996). The district court properly considered, *sua sponte,* the lack of subject matter jurisdiction over the petition. Although the respondents did not formally move to dismiss the petition for lack of subject matter jurisdiction below, this "does not act to confer [federal] jurisdiction ... since a challenge to subject matter jurisdiction cannot be waived and may be raised *sua sponte*" by the court. *Alliance of Am. Insurers v. Cuomo,* 854 F.2d 591, 605 (2d Cir. 1988); FED. R. CIV. P. 12(h); *see also, e.g., United States v. Griffin,* 303 U.S. 226, 229, 58 S.Ct. 601, 602–03, 82 L.Ed. 764 (1938); *Louisville & Nashville R.R. Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908). When subject matter jurisdiction is lacking, dismissal is mandatory. *Griffin,* 303 U.S. at 229, 58 S.Ct. at 602–03; *United Food & Commercial Workers Union, Local 919 v. Centermark Properties Meriden Square, Inc.,* 30 F.3d 298, 301 (2d Cir.1994).

The petitioners seek a stay of arbitration under FAA § 4.[3] In their petition, they state the jurisdictional basis for their claim as follows:

---

**3.** Because we find that subject matter jurisdiction is lacking, we do not need to decide whether the FAA gives federal courts the power to stay arbitration proceedings. While § 3 of the FAA gives federal courts the power to stay *trials* pending *arbitration,* we note that a number of courts have held that, in appropriate circumstances, § 4

of the FAA may be applied to stay or enjoin arbitration proceedings. *See, e.g., Societe Generale de Surveillance, S.A. v. Raytheon European Management & Sys. Co.,* 643 F.2d 863, 868 (1st Cir.1981); *L.F. Rothschild & Co. v. Katz,* 702 F.Supp. 464, 468 (S.D.N.Y.1988).

This Court has jurisdiction of this action pursuant to 9 U.S.C. § 4 and 28 U.S.C. § 1331, because the claims alleged in the underlying lawsuit arise, at least in part, under the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.*

■ It is well-established, however, that the FAA, standing alone, does not provide a basis for federal jurisdiction. *See Southland Corp. v. Keating,* 465 U.S. 1, 15 n. 9, 104 S.Ct. 852, 861 n. 9, 79 L.Ed.2d 1 (1984); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983) ("The Arbitration Act is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction."); *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 910 F.2d 1049, 1051 n. 1 (2d Cir.1990). Before a district court may entertain a petition under the FAA, there must be an "independent basis of jurisdiction." *Harry Hoffman Printing, Inc. v. Graphic Communications, Int'l Union, Local 261,* 912 F.2d 608, 611 (2d Cir.1990).

Petitioners argue that there is an independent basis for federal question jurisdiction over their claim—namely, the Exchange Act. Specifically, they argue that federal question jurisdiction is proper in this instance, because their petition raises a statute of limitations defense to the respondents' underlying arbitration claim against the Jaysons. Petitioners argue that the arbitration claim, in turn, itself arises under the "controlling person" provision of the Exchange Act, 15 U.S.C. § 78t.[4]

The petitioners' argument fails for two reasons: (1) it is based on a misinterpretation of FAA § 4 and (2) it would require us to overturn the well-established rule that federal question jurisdiction must be determined based on the face of a "well-pleaded complaint." We address each issue in turn.

### A. The Text of the Federal Arbitration Act.

■ The text of FAA § 4 appears to confer jurisdiction on federal courts to issue motions to compel arbitration in cases where the court would have jurisdiction over the underlying claims.[5] A number of courts, however, have concluded that they lack federal question jurisdiction over an action brought under § 4, even though the underlying arbitration claim raised a federal question over which the court would have had subject matter jurisdiction if the claim had originally been brought in federal court. *See, e.g., Prudential–Bache Sec., Inc. v. Fitch,* 966 F.2d 981, 986–88 (5th Cir.1992); *Kaplan v. Dean Witter Reynolds, Inc.,* 896 F.Supp. 1219, 1219–20 (S.D.Fla.1995); *Giangrande v. Shearson Lehman/E.F. Hutton,* 803 F.Supp. 464, 469–73 (D.Mass.1992); *In re Prudential Sec., Inc.,* 795 F.Supp. 657, 660–62 (S.D.N.Y.1992); *Klein v. Drexel Burnham Lambert, Inc.,* 737 F.Supp. 319, 322–24 (E.D.Pa.1990); *Drexel Burnham Lambert, Inc. v. Valenzuela Bock,* 696 F.Supp. 957 (S.D.N.Y.1988); *cf. Minor v. Prudential Sec., Inc.,* 94 F.3d 1103 (7th Cir. 1996) (same finding with respect to FAA § 10); *City of Detroit Pension Fund v. Prudential Sec., Inc.,* 91 F.3d 26, 29 (6th Cir. 1996) (same).

We are persuaded by Judge Leval's opinion in *Valenzuela Bock,* which found, in a case in which the underlying claims were based on federal securities laws, that the text of § 4 does not confer federal question jurisdiction "where the claim of federal jurisdiction is not based on the petition itself, but rather on the federal character of the underlying dispute [in arbitration]." 696 F.Supp. at 965. After carefully analyzing the legislative history and purposes of the FAA, Judge Leval found that the language of FAA § 4 is

---

4. *See supra* note 1 for text of 15 U.S.C. § 78t.

5. FAA § 4 reads in pertinent part as follows:
   A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under ·

Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.
9 U.S.C. § 4.

not intended to confer jurisdiction, but should instead be read as a response to the antiquated common law principle that an agreement to arbitrate would oust the federal courts of jurisdiction. *Id.* at 961–62.[6]

Additionally, although a number of provisions in the FAA refer to the "United States court" in a manner that suggests a bestowal of jurisdiction (e.g., FAA §§ 7, 9, 10, 11), these provisions have not been interpreted to confer jurisdiction on the federal courts. *See Valenzuela Bock*, 696 F.Supp. at 960–61 (collecting cases). If the language of FAA § 4 were interpreted to give federal courts jurisdiction to compel arbitration whenever the underlying claim involves a federal question, this would produce an odd distinction: a petition to compel arbitration could be brought in federal court, but a petition under FAA §§ 9 or 10 to confirm or vacate the arbitration award in the same dispute could not. This distinction would truly be "bizarre," because "[t]he interest of the federal court in determining whether the arbitration award was entered in manifest disregard of the federal law ... would seem to be far greater than the federal interest in seeing that the claims could be arbitrated." *Valenzuela Bock*, 696 F.Supp. at 963 (internal citations and quotation marks omitted).

In sum, we find that the text of FAA § 4 should not be interpreted to mean that a federal court has subject matter jurisdiction over an action to compel or stay arbitration merely because the underlying claim raises a federal question. A petition under FAA § 4 to compel or stay arbitration must be brought in state court unless some other basis for federal jurisdiction exists, such as diversity of citizenship or assertion of a claim in admiralty.

## B. The "Well–Pleaded Complaint" Rule.

The petitioners also ask us to find that FAA § 4 constitutes a legislative reversal of the general rule that 28 U.S.C. § 1331 federal question jurisdiction must be determined based on the face of a "well-pleaded complaint." *See, e.g., Oklahoma Tax Comm. v. Graham*, 489 U.S. 838, 840–41, 109 S.Ct. 1519, 1520–21, 103 L.Ed.2d 924 (1989) (per curiam) (Under the "well-pleaded complaint" rule, "whether a case is one arising under [federal law] ... must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." (internal citations and quotation marks omitted) (alterations in *Graham*)); *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 272 (2d Cir. 1994); *West 14th St. Commercial Corp. v. 5 West 14th Owners Corp.*, 815 F.2d 188, 192 (2d Cir.), *cert. denied*, 484 U.S. 850, 108 S.Ct. 151, 98 L.Ed.2d 107 (1987).

■ It seems highly unlikely that Congress intended to repeal the well-pleaded complaint rule when it adopted the predecessor statute to the current FAA in 1925, Act of February 12, 1925, c. 213 § 1 *et seq.*, 43 Stat. 883. When that statute was enacted, the well-pleaded complaint rule had been established for at least thirty-seven years. *See Metcalf v. Watertown*, 128 U.S. 586, 588–89, 9 S.Ct. 173, 173–74, 32 L.Ed. 543 (1888); *West 14th St. Commercial Corp.*, 815 F.2d at 192; *see also, Mottley*, 211 U.S. at 152, 29 S.Ct. at 43. When Congress has intended to create an exception to the well-pleaded complaint rule, it has provided so explicitly. *See, e.g.,* 28 U.S.C. § 1442(a)(allowing removal to federal court of civil or criminal actions filed in state court against officers of the United States); 12 U.S.C. § 632 (providing for origi-

---

**6.** Judge Leval also found that § 4 should be interpreted as providing that "a court which is otherwise vested of jurisdiction of the suit would not be divested [of jurisdiction] by the arbitration agreement and may proceed to order arbitration, contrary to prior precedent." *Valenzuela Bock*, 696 F.Supp. at 961–62. Accordingly, when federal jurisdiction is otherwise present by reason of diversity or admiralty, courts have held that a petition "seeking affirmative relief under an agreement to arbitrate does not divest the court of jurisdiction." *Id.* at 963 (citing *The Anaconda v. American Sugar Refining Co.*, 322 U.S. 42, 44–45, 64 S.Ct. 863, 864–65, 88 L.Ed. 1117 (1944) (suit in admiralty under FAA § 4)); *see also, Doctor's Assoc., Inc. v. Distajo*, 66 F.3d 438, 444–45 (2d Cir.1995) (suit in diversity under FAA § 4), *cert. denied*, — U.S. —, 116 S.Ct. 1352, 134 L.Ed.2d 520 (1996); *Atlanta Shipping Corp. v. Cheswick–Flanders & Co.*, 463 F.Supp. 614, 617 (S.D.N.Y.1978) (suit in admiralty under FAA § 4).

nal and removal jurisdiction over certain cases raising issues with respect to foreign or international banking). Indeed, when Congress in 1970 intended to expand federal jurisdiction to give the United States district courts the authority to hear specified arbitration cases under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 *et seq.*, it did so expressly. *See* 9 U.S.C. § 203 (giving federal district courts jurisdiction over an action or proceeding falling under the Convention); 9 U.S.C. § 205 (allowing cases within the Convention to be removed from state to federal court notwithstanding the well-pleaded complaint rule). It seems clear that Congress's purpose in enacting the FAA was to "revers[e] the centuries of judicial hostility to arbitration agreements, by plac[ing] arbitration agreements upon the same footing as other contracts." *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 225–26, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987) (citations and internal quotation marks omitted) (alterations in *McMahon*). We therefore conclude that FAA § 4 does not overturn the well-pleaded complaint rule.

■ In this case, the nature of the underlying dispute (here, a claim by the respondents under the Exchange Act), is not part of a "well-pleaded complaint" asking the court to stay arbitration. The rights of the respective parties under the Exchange Act, including the petitioners' statute of limitations defense, will enter the dispute, if at all, only if they are raised as part of the respondents' *answer to the petition.* Petitioners' alleged right to stay arbitration is not derived from the Exchange Act, but from the NASD Code and the FAA. The petitioners' statute of limitations defense, although it is recited on the face of the petition, is only relevant in that it anticipates that respondents' answer would argue that their arbitration claims are meritorious under the Exchange Act. It is settled beyond doubt that issues of federal law that are injected into a suit by the answer rather than the complaint do not satisfy the requirements of 28 U.S.C. § 1331. *See Phillips Petroleum Co. v. Texaco, Inc.,* 415 U.S. 125, 127–28, 94 S.Ct. 1002, 1003–04, 39 L.Ed.2d 209 (1974) (per curiam) ("The federal questions must be disclosed upon the face of the complaint, unaided by the answer." (internal quotation marks omitted)). The fact that the face of the petition alludes to the respondents' Exchange Act claim does not vitiate this result: the petition, as we have explained above, is not a "well-pleaded complaint."

■ Although not raised on appeal, we have also considered whether the fact that the respondents counterclaimed to compel arbitration under FAA § 4 in any way undermines our view that the district court lacked subject matter jurisdiction in this case. *See United Food,* 30 F.3d at 301 (stating that "our cases make clear that it is common ground that in our federal system of limited jurisdiction any party or the court sua sponte, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction." (internal quotation marks omitted)). As we have previously observed, "[w]here a court dismisses an action for lack of federal subject matter jurisdiction, it may nonetheless adjudicate a counterclaim presenting an independent basis for jurisdiction." *Niagara Mohawk,* 94 F.3d at 753. We have also found that when we have jurisdiction to consider some issues on appeal, "we may exercise our discretion to take pendent jurisdiction over related questions." *Golino v. City of New Haven,* 950 F.2d 864, 868 (2d Cir.1991), *cert. denied,* 505 U.S. 1221, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992). Accordingly, we have jurisdiction to determine whether the respondents' counterclaim provides a basis for subject matter jurisdiction in this case.

We find that the respondents' counterclaim does not provide an alternative basis for federal question jurisdiction for the same reasons that the petition failed to provide jurisdiction. As with the petition, the respondents' basis for seeking to compel arbitration is FAA § 4. As discussed above, neither FAA § 4 nor the underlying federal nature of the dispute provides the necessary subject matter jurisdiction. *Prudential–Bache Sec.,* 966 F.2d at 988; *Valenzuela Bock,* 696 F.Supp. at 960–64.

Accordingly, we conclude that, because neither the petition nor the counterclaim sat-

isfies the well-pleaded complaint rule, both must be dismissed for lack of subject matter jurisdiction.

### III. CONCLUSION

To summarize:

1. We affirm the district court's decision to dismiss appellants' petition to stay arbitration and appellees' counter-claim to compel arbitration for lack of subject matter jurisdiction.

2. Because we find that subject matter jurisdiction was lacking in this case, we do not address the district court's alternative ground for dismissing the petition, that the issue of timeliness is a matter for the arbitrator, not the courts, to decide.