PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

DISCOVER BANK; DISCOVER FINANCIAL
SERVICES, INCORPORATED,
                  *Plaintiffs-Appellees,*

v.

BETTY E. VADEN,
                  *Defendant-Appellant.*

No. 04-1848

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William D. Quarles, Jr., District Judge.
(CA-03-3224-1-WDQ)

Argued: December 1, 2004

Decided: January 24, 2005

Before WILKINSON, TRAXLER, and DUNCAN, Circuit Judges.

---

Vacated and remanded by published opinion. Judge Wilkinson wrote
the opinion, in which Judge Traxler and Judge Duncan joined.

---

## COUNSEL

**ARGUED:** John Andrew Mattingly, Jr., BALDWIN, BRISCOE &
MATTINGLY, CHTD., Lexington Park, Maryland, for Appellant.
Christopher Landau, KIRKLAND & ELLIS, L.L.P., Washington,
D.C., for Appellees. **ON BRIEF:** Joseph W. Hovermill, Matthew T.
Wagman, John C. Celeste, II, MILES & STOCKBRIDGE, P.C., Bal-
timore, Maryland; Alan S. Kaplinsky, Martin C. Bryce, Jr., BAL-

LARD, SPAHR, ANDREWS & INGERSOLL, L.L.P., Philadelphia, Pennsylvania, for Appellees.

---

**OPINION**

WILKINSON, Circuit Judge:

Betty Vaden, a Discover card holder, was sued in state court by Discover Financial Services, an affiliate of Discover Bank, for her unpaid credit card balance. In response, she instituted several class action counterclaims against Discover Financial Services based on state law. Discover then filed suit in federal district court under § 4 of the Federal Arbitration Act, seeking to compel Ms. Vaden to submit her counterclaims to arbitration. The district court ordered arbitration.

On appeal, this court was presented with a host of issues, including the threshold question of whether the federal district court had subject matter jurisdiction to hear the case. We remand most of these issues for the district court to consider in the first instance. However, we do hold that when a party comes to federal court seeking to compel arbitration, the presence of a federal question in the underlying dispute is sufficient to support subject matter jurisdiction. Whether such a question exists here is a matter we reserve for the district court on remand.

I.

Discover Bank issued Betty Vaden a credit card in October 1990. Discover Financial Services ("DFS") is the servicing affiliate of the bank. On June 23, 2003, DFS sued Ms. Vaden in Maryland state court for the nonpayment of over $10,000 in credit card bills. Ms. Vaden responded by filing several class action counterclaims against DFS on behalf of herself and other Maryland residents. All of these counterclaims — most involving breach of contract allegations as to increased interest rates and late fees — were based on Maryland law. It is Discover's position that these state law claims are completely preempted by the Federal Deposit Insurance Act.

On November 12, 2003, Discover filed a petition in the United States District Court for the District of Maryland seeking to compel arbitration of Ms. Vaden's counterclaims. According to Discover, Ms. Vaden's credit card agreement was amended in July 1999 to include a provision requiring arbitration in the event of a dispute. Thus, Discover asked the federal court to compel arbitration, invoking § 4 of the Federal Arbitration Act. 9 U.S.C. § 4 (2000).

Whether or not a valid arbitration agreement exists between the parties is a matter of some controversy. Ms. Vaden has never signed such an agreement. However, Discover points to language in the original credit agreement which specifies that it can be amended by written notice and that "the use of your Account or the Card on or after the effective date of the change means that you accept and agree to the change." Discover claims it mailed Ms. Vaden a notice in July 1999 explaining that her credit card agreement was being amended to include an arbitration provision. By continuing to use her card after receiving this notice, Discover says Ms. Vaden consented to the new terms of her agreement.

Ms. Vaden argues, however, that this notice of amendment was addressed only to Discover card members who held a Discover Platinum card. She claims — supported by evidence from Discover's own business records — that she was not a Discover Platinum card holder until September 1999. Thus, she says, the amendment notice allegedly sent in July did not apply to her.[1]

In any event, on December 15, 2003, and on January 12, 2004, Ms. Vaden filed a motion to dismiss and a motion for summary judgment with the district court. She asked the court to dismiss Discover's suit compelling arbitration for two main reasons. First, Ms. Vaden claimed that Discover Bank lacked standing to sue for arbitration since the class action counterclaims were filed against Discover Financial Services, and not Discover Bank. Second, Ms. Vaden

---

[1]Discover counters this argument by explaining that Ms. Vaden's account was "automatically" upgraded to a Discover Platinum account in June of 1999. Ms. Vaden contends, though, that she was not asked to write her check to Discover Platinum until November of 1999.

argued that she had never validly entered into an arbitration agreement with Discover.

On June 21, 2004, the district court rejected Ms. Vaden's arguments and granted Discover's request to compel arbitration. It ordered that Ms. Vaden's counterclaims in state court be stayed pending the outcome of the arbitration. With the exception of the standing issue, the district court did not have the opportunity to address any of the issues relating to its subject matter jurisdiction which are now before this court on appeal.

## II.

We must first address the question of whether the district court had subject matter jurisdiction over the present case. Discover asserts that its suit is properly in federal court by virtue of 28 U.S.C. § 1331 (2000) because it presents a federal question. Since neither party pressed this issue in the court below, it is before us for the first time on appeal.

Discover invokes § 4 of the Federal Arbitration Act ("FAA") to support its view that federal question jurisdiction exists. This part of the FAA states that a petition to compel arbitration can be filed in "any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties. . . ." 9 U.S.C. § 4.

No one contends that this statute in and of itself constitutes a federal question. Indeed, such an understanding is inconsistent with the language of the statute and has been foreclosed by the Supreme Court. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25, n.32 (1983). However, the courts of appeals are in disagreement as to whether — in a suit to compel arbitration authorized by § 4 — a district court has subject matter jurisdiction of a case when the underlying dispute between the parties raises a federal question. *Compare Westmoreland Capital Corp. v. Findlay*, 100 F.3d 263 (2d Cir. 1996) *with Tamiami Partners, Ltd. v. Miccosukee Tribe*, 177 F.3d 1212 (11th Cir. 1999).

There are two approaches to this issue, which respectively narrow and broaden the instances in which a federal court can properly assume jurisdiction of a suit under § 4 of the FAA. The narrower view has come to be known as the *Westmoreland* doctrine. *See Blue Cross v. Anesthesia Care Assocs. Med. Group*, 187 F.3d 1045, 1050, n.5 (9th Cir. 1999). This doctrine holds that for a district court to have federal question jurisdiction over a suit compelling arbitration, the federal question must be evident on the face of the arbitration petition itself. Perhaps realizing that such a possibility is highly unlikely, the *Westmoreland* line of cases concludes that federal question jurisdiction will never form the basis for a court's subject matter jurisdiction to hear a § 4 petition. *Westmoreland*, 100 F.3d at 268. Under this view, jurisdiction will lie only when "some other basis for federal jurisdiction exists, such as diversity of citizenship or assertion of a claim in admiralty," but will not lie simply because the underlying controversy between the parties "raises a federal question." *Id.*

By contrast, the broader view permits a federal court to examine the underlying dispute between the parties to determine if a federal question is present. On this understanding, a district court is permitted to "look through" the arbitration request to assess whether the overall controversy between the parties is grounded in federal law. *Tamiami Partners*, 177 F.3d at 1223, n.11.

After examining the text of § 4 and the relevant precedent, we are persuaded by the broader view outlined above. We thus hold that a federal court possesses subject matter jurisdiction over a case when the controversy underlying the arbitration agreement presents a federal question.

A.

It is fundamental that "[w]hen interpreting statutes we start with the plain language." *U.S. Dep't of Labor v. North Carolina Growers Ass'n*, 377 F.3d 345, 350 (4th Cir. 2004). In fact, "where the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *U.S. ex rel. Wilson v. Graham County Soil & Water Conservation Dist.*, 367 F.3d 245, 247 (4th Cir. 2004)(internal quotation omitted).

Section 4 of the FAA states:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties . . .

9 U.S.C. § 4. We are convinced that this language directs courts to look through the arbitration agreement so to assess questions of subject matter jurisdiction. There are three specific components of the text which lead us to this conclusion.

First, there is the phrase "save for such agreement" in the text of § 4. It is a classic canon of statutory construction that courts must "give effect to every provision and word in a statute and avoid any interpretation that may render statutory terms meaningless or superfluous." *United States v. Ryan-Webster*, 353 F.3d 353, 366 (4th Cir. 2003)(internal quotation omitted). When interpreting these words, we must give them their "common and ordinary meaning." *Mapoy v. Carroll*, 185 F.3d 224, 229 (4th Cir. 1999).

The common understanding of the phrase "save for" means "but for" or "notwithstanding." Used in this context, "save for such agreement" must mean that the district court would have jurisdiction of the case even if the agreement had never existed. We thus read this phrase as an instruction to set aside the arbitration agreement and then consider the grounds for federal jurisdiction independently. Indeed, we can think of no other reason why Congress would have chosen to include the "save for" language.[2]

---

[2]We are unpersuaded by the argument adopted by some courts that the "save for" language was included by Congress for the purpose of responding to an "antiquated and arcane principal of the common law" where a claim for specific performance of an arbitration agreement would oust the court of jurisdiction. *Drexel Burnham Lambert, Inc v. Valenzuela Bock*, 696 F. Supp. 957, 961-62 (S.D.N.Y. 1988).

Second, we find significant the decision of Congress to reference "Title 28" generally in the text of § 4. The statute reads that a party can petition a district court which "save for such agreement, would have jurisdiction under Title 28 . . ." 9 U.S.C. § 4. Congress could have decided to parse Title 28 into its component parts. It could, for instance, have specifically referred to either § 1332 (diversity) or § 1331 (federal question jurisdiction). There are indeed examples in the United States Code where Congress has been so specific. *See, e.g.*, 42 U.S.C. § 9613(h) (2000); 22 U.S.C. § 6082(c)(1) (2000). But Congress chose not to do so in the FAA. And "where Congress knows how to say something but chooses not to, its silence is controlling." *In re Griffith*, 206 F.3d 1389, 1394 (11th Cir. 2000)(internal quotation omitted).

This general reference to "Title 28" means a party may petition a district court to compel arbitration if the district court would have subject matter jurisdiction of the underlying suit by virtue of any provision in Title 28. Siphoning off federal question jurisdiction from Title 28 would rewrite the statute.

The third section of the statutory text we find significant is the phrase "controversy between the parties." Section 4 specifies that one can seek to compel arbitration in a district court when that court would have jurisdiction "under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties . . . ." 9 U.S.C. § 4. Those urging adoption of the *Westmoreland* doctrine would interpret the phrase "controversy between the parties" to encompass only the discrete dispute about whether there is a valid arbitration agreement. We think the more nat-

---

As the authors of a respected federal arbitration treatise explain, this theory is historically inaccurate. See 1 MacNeil, Speidel & Stipanowich, *Federal Arbitration Law* § 9.2.3 (1995). For, the "save for" language is found only in the FAA, not in any of the state arbitration reform acts upon which the FAA was based. Those states suffered from the same common law ouster problem. Had the "save for" language been meant to solve the ouster problem, "similar language would have been found in the 1920 New York Act, the 1923 New Jersey Act, and the old UAA, all drafted by the same reformers who drafted the FAA." *Id.* at 9:18.

ural reading of the phrase is as a reference to the overall substantive conflict between the parties.

Litigants do not come to court solely to resolve the collateral issue of whether or not they have an agreement to arbitrate. Instead, parties incurring the expense and burdens of litigation are motivated to resolve their real-life conflicts and move on. In this case, for example, the question of the arbitration agreement's existence only arose because one party thought it was owed $10,000. That alleged debt is the source of the "controversy between the parties." The "controversy between the parties," as that term is used in 9 U.S.C. § 4, is the underlying one, and it is that controversy that must arise under federal law.

This common understanding of the word "controversy" must govern our interpretation unless Congress chooses to narrow the term. The text of § 4 requires us to consider jurisdiction as it arises out of the whole controversy between the parties. This necessarily entails looking beyond the arbitration petition alone.

### B.

Two further aspects of the *Westmoreland* doctrine reinforce our conclusion that it is not consistent with the statute.

### 1.

The courts which have adopted the *Westmoreland* doctrine were moved by an understandable allegiance to the well-pleaded complaint rule. *See, e.g.*, *Westmoreland*, 100 F.3d at 268-69; *Prudential-Bache Secs., Inc. v. Fitch*, 966 F.2d 981, 988 (5th Cir. 1992). These cases rightly point out that, "[t]he usual rules for determining federal question jurisdiction provide that a complaint will not avail a basis of jurisdiction in so far as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense." *Prudential-Bache*, 966 F.2d at 988, citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 113 (1936).

According to these courts, a federal question will never properly arise under a § 4 arbitration petition because such a petition never

invokes a federal question on its face. Thus, they reason, if the FAA "is construed to provide for a federal forum whenever the underlying dispute involves a federal question, it must be seen as overturning the well-established rule that § 1331 federal question jurisdiction must be determined based on the face of a well-pleaded complaint." *Valenzuela Bock*, 696 F. Supp. at 963. This result, they conclude, is unacceptable because "[t]here is no indication that Congress in enacting the FAA . . . intended to change the rules for determining federal jurisdiction over a complaint." *Prudential-Bache*, 966 F.2d at 988. *See also Westmoreland*, 100 F.3d at 269.

We respect this argument, but we do not find it persuasive. For it is not true that a fair reading of § 4 "changes the rules" of the well-pleaded complaint doctrine. Indeed, the rules of the well-pleaded complaint doctrine, while strict, are not as rigid as the *Westmoreland* court suggests.

Under the Declaratory Judgment Act, for example, a party which traditionally would be a defendant can bring a preemptive suit in federal court, thus accelerating the claim against it. This creates a wrinkle in the traditional well-pleaded complaint rule. A would-be *plaintiff* — who might well have a federal cause of action — is transformed into a declaratory-judgment *defendant*, incapable of invoking a federal question on the face of a well-pleaded complaint. *See generally* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2767 (3d ed. 1998).

The Supreme Court has resolved this by simply directing federal courts to hypothesize what a well-pleaded complaint in a traditional case would look like. "*Skelly Oil* has come to stand for the proposition that if, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 16 (1983)(internal quotation omitted). Alternatively, "[f]ederal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question." *Id.* at 19. Just as the real controversy for purposes of *Skelly Oil* and *Franchise Tax Board* was the prospect of a federal question suit which prompted the

declaratory judgment action, so the real controversy in cases like the present one is whether a federal action prompted the motion to compel arbitration.

None of this, of course, expands federal question jurisdiction. Often, as in *Franchise Tax Board*, the conclusion reached will be that no properly invoked federal question exists in the underlying controversy. But this is not the inevitable conclusion; if it were, the entire reasoning process would be an exercise in futility and a waste of time. The same is true of the instructions in § 4 of the FAA. As explained above, the text of the FAA quite explicitly directs the federal courts to put aside the arbitration agreement, and determine if the court "would have jurisdiction under Title 28" without it. 9 U.S.C. § 4. By looking to the dispute underlying an arbitration petition — as the text of § 4 requires us to do — we are not "changing the rules" of federal question jurisdiction. We are just applying the rules in the context of the FAA's procedural posture, just as the Supreme Court did with the Declaratory Judgment Act in *Franchise Tax Board*.

2.

There is a second aspect of the *Westmoreland* doctrine that concerns us. Were we to follow that line of cases, we would greatly restrict the ability of federal courts to hear cases under § 4 of the FAA. Indeed, the *Westmoreland* court admits that its view forecloses the possibility that federal question jurisdiction could ever form the basis for subject matter jurisdiction of a § 4 petition. *Westmoreland*, 100 F.3d at 268. This means that, for all practical purposes, a federal court could never hear a suit to compel arbitration unless the parties happen to be diverse. *Id.* ("A petition under FAA § 4 to compel or stay arbitration must be brought in state court unless some other basis for federal jurisdiction exists, such as diversity of citizenship or a claim in admiralty.").

We find this consequence of the *Westmoreland* doctrine inconsistent with the "congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses Cone*, 460 U.S. at 24. As we have explained, "[t]he Federal Arbitration Act embodies a federal policy favoring arbitration. Thus, 'as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor

of arbitration.'" *Drews Distrib., Inc. v. Silicon Gaming, Inc.*, 245 F.3d 347, 350 (4th Cir. 2001) (quoting *Moses Cone*, 460 U.S. at 24-25). *See also Whiteside v. Teltech Corp.*, 940 F.2d 99, 101 (4th Cir. 1991).

Were we to follow *Westmoreland* and eliminate the ability of a federal court to hear a § 4 petition in which federal question jurisdiction exists over the actual dispute, we would be mangling the congressional intent behind the FAA that "plac[es] arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). Of course state courts are capable of applying federal law, including a petition to compel arbitration under the FAA. But the disfavor to arbitration lies in limiting § 1331 in these cases to such an extent that the real controversy between the parties cannot reach federal court even when the plaintiff's complaint emphatically presents a federal question.

To be clear, we do not imply that arbitration agreements should receive preferential treatment. No doors to federal court are open to those claims that are closed to others. We agree that in passing the FAA Congress did not intend to create federal jurisdiction, *see Moses Cone*, 460 U.S. at 25, n.32, but we are likewise persuaded that Congress did not mean to unduly restrict federal jurisdiction either. We thus decline to eliminate § 1331 as a possible basis for federal jurisdiction over a petition to compel arbitration under § 4 of the FAA.

C.

In addition to the statutory text, our own precedent requires us to reject the *Westmoreland* doctrine.

In *Gibraltar, Inc. v. Otoki Group, Inc.*, this court faced a trademark ownership dispute. 104 F.3d 616 (4th Cir. 1997). Gibraltar filed suit in federal court, under § 4 of the FAA, asking that Otoki be compelled to arbitrate. *Id.* at 619. We agreed with the district court that it lacked subject matter jurisdiction since no properly invoked federal question existed. *Id.* Gibraltar had not alleged a violation of the Lanham Act, and we refused to hold that a federal question existed merely because the subject of the contract dispute was a federally-created property interest. *Id.* Significantly, however, we reached this

conclusion only *after* examining the underlying controversy between the parties. *Id.* at 619.

Adhering to the *Westmoreland* doctrine would mean stopping the *Gibraltar* analysis after a realization that the parties were neither diverse nor making a claim in admiralty. This we cannot do. *Gibraltar* indicates, therefore, that we assume the plain text of § 4 requires us to ask whether any basis for subject matter jurisdiction would exist for the case in the absence of the arbitration agreement.

## III.

A federal court may therefore hear a § 4 petition to compel arbitration if, but for the arbitration agreement, subject matter jurisdiction over the case would otherwise exist by virtue of a properly invoked federal question in the underlying dispute. The question remains, however, whether such a federal question exists in this case. We reserve the resolution of that question for the district court.

We recognize that challenges to a federal court's subject matter jurisdiction can be brought at any stage in litigation. *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003). However, this case presents several legally complex and partially fact-bound inquiries which must be answered prior to resolving the subject matter jurisdiction question.[3] We therefore think it prudent to remand these issues to the lower court, so that it can decide them in the first

---

[3]Several such inquiries suggest themselves. First, in order to decide if a federal question exists, the court must decide whether Ms. Vaden's state law counterclaims are completely preempted by the Federal Deposit Insurance Act. *See* 12 U.S.C. § 1831d(a) (2000). This decision may be affected by the court's determination as to whether Discover Bank — as opposed to merely Discover Financial Services — is a party of interest in the state law suit.

Second, if the court finds that a federal question has not been properly stated, it will need to consider the pending motion to amend and, if granting it, ascertain whether the parties are diverse and whether the other requirements of § 1332 are properly met.

instance.[4]

*VACATED AND REMANDED*

---

[4]In the event the lower court concludes it does have subject matter jurisdiction over this case, it should reexamine whether there was a question of material fact about the existence of an arbitration agreement between these particular parties. Specifically, the district court should consider whether Discover's own financial records — viewed in the light most favorable to Vaden — could successfully rebut the presumption that she was subject to the amended agreement during the relevant time period.