**MED–TEL INTERNATIONAL CORP., et. al., Petitioners,**

v.

**Michael C. LOULAKIS, et. al., Respondents.**

**Med–Tel International Corp., et. al., Applicants,**

v.

**Michael C. Loulakis, et. al., Respondents.**

**Nos. 1:05CV1205, 1:05MC148.**

United States District Court, E.D. Virginia, Alexandria Division.

Dec. 7, 2005.

Philip J. Harvey, Venable LLP, Vienna, VA, Geoffrey T. Hervey, Bregman, Berbert & Schwartz, LLC, Bethesda, MD, Melissa A. Zeller, Jordan Coyne & Savits LLP, Fairfax, VA, for Petitioners.

Michael C. Loulakis, Jon M. Wickwire, Vienna, VA, for Respondents.

## MEMORANDUM OPINION

BRINKEMA, District Judge.

Before the Court is the Motion to Remand of Michael Loulakis and Jon Wickwire ("respondents") who were among the original investors in Med–Tel International Corporation ("Med–Tel"), a business involved in owning and operating diagnostic imaging centers in the United States and the United Kingdom. Essentially, respondents argue that because the parties are not diverse, this Court lacks subject matter jurisdiction to resolve the parties' dispute over whether an award by the American Arbitration Association should be confirmed or vacated.

The Motion to Remand is contested by Med–Tel and the three individual petitioner/applicants, Ronald Coleman, James McGillan, and Robert Klein (collectively "petitioners"). They argue that because the claims involved in the arbitration proceeding included allegations of federal securities fraud, this Court has federal question jurisdiction to determine whether the arbitration award should be confirmed or vacated.

## I. Background

In 2003, Med–Tel entered into a complex refinancing transaction in which Parthenon Capital LLC was to invest in Med–Tel. This resulted in Med–Tel becoming the 100% subsidiary of a new company, Med–Tel International Holdings, Inc. ("Med–Tel Holdings"). As part of this transaction, Med–Tel shareholders who had indicated an interest in selling their shares received $2.50 per share. Most shareholders, including respondents, had their Med–Tel stock converted into shares in Med–Tel Holdings. The relationship among the shareholders, Med–Tel, Med–Tel Holdings and Med–Tel Merger Corporation ("Merger Co."), a company temporarily created to serve as the vehicle for transferring stock and cash from Med–Tel to Med–Tel Holdings, was governed by a 42 page document entitled, "Agreement and Plan of Merger and Reorganization Among Med–Tel International Corporation, Certain Stockholders Thereof, Med–Tel International Holdings, Inc. and Med–Tel Merger Corp." ("2003 Merger Agreement"). That agreement contained a broad arbitration clause, that provided for arbitration, "[i]n the event that *any* dispute should arise between the parties with respect to *any* matter covered by the Merger Agreement or the Subscription Agreement *or the in-*

**498**

*terpretation thereof.*"   Par. 10.9(a)(emphasis added).

On March 12, 2005, in accordance with the provisions of paragraph 10.9(a), respondents filed a demand for arbitration with the American Arbitration Association alleging numerous claims including securities and common law fraud, negligent misrepresentation, breach of contract and breach of implied duties of good faith and fair dealing. On August 2, 2005, Med–Tel filed a Petition to Stay Arbitration Proceedings in the Circuit Court of Fairfax County, arguing that the arbitration clause in paragraph 10.9(a) was narrow and that the claims respondents had filed with the arbitrator fell outside the agreement to arbitrate and should therefore be resolved by a court.[1] Similar arguments were raised by Med–Tel before the arbitrator, who rejected them and issued an award in respondents' favor on September 20, 2005.

On September 22, 2005, respondents filed a Motion for Application to Confirm Arbitration Award ("Motion to Confirm") in the same circuit court action previously opened by Med–Tel. This event explains why the putative plaintiff in the state court proceeding filed a Notice of Removal. The Notice of Removal was filed in this Court on October 18, 2005. On November 2, 2005, Med–Tel filed a miscellaneous action in this Court under § 10 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq,* to vacate the arbitration award.[2] Given the overlap of parties and issues these cases have been consolidated. *See* Order of Nov. 15, 2005.

**II.   Discussion**

The sole issue before the Court is whether it has subject matter jurisdiction to consider the merits raised in these two cases. Because the parties are not diverse, petitioners rely upon the argument that a federal question is involved in these cases. Federal question jurisdiction is conferred on the courts by 28 U.S.C. § 1331 which states that the district courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." In determining whether an action "arises under" the laws of the United States, the courts of the Fourth Circuit first "discern whether federal or state law creates the cause of action" and, if federal law does not create the cause of action, then determine whether "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Pinney v. Nokia, Inc.,* 402 F.3d 430, 442 (4th Cir.2005)(internal quotations omitted).

■  However, it is well recognized that the FAA "is something of an anomaly in the field of federal-court jurisdiction" in that it "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 (1976 ed., Supp. IV) or otherwise." *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). *See also Southland Corp. v. Keating,* 465 U.S. 1, 15 n. 9, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); *Discover Bank v. Vaden,* 396 F.3d 366, 368 (4th Cir.2005)("No one contends

---

**1.**  The circuit court never ruled on the Petition to Stay Arbitration Proceedings because the court's calendar could not accommodate a hearing on the Petition before the scheduled arbitration, which began on August 11, 2005. Therefore, the calendar control judge denied the petitioners' request for a special, expedit-

ed hearing, but did not rule on the merits of the Petition.

**2.**  The removed action was docketed as 1:05cv1205, and the miscellaneous action was docketed as 1:05mc148.

that this statute [the FAA] in and of itself constitutes a federal question. Indeed, such an understanding is inconsistent with the language of the statute and has been foreclosed by the Supreme Court."). Therefore, even though it would appear that respondents' and petitioners' causes of action are created by §§ 9 and 10 of the FAA respectively, this alone cannot satisfy the requirements for federal question jurisdiction under 28 U.S.C. § 1331.

█ Petitioners maintain that the Court has subject matter jurisdiction because some of the claims adjudicated in the arbitration proceeding arose under Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.* In arguing that these underlying securities fraud claims confer subject matter jurisdiction on this Court to confirm or vacate the arbitration award, petitioners rely heavily on the Fourth Circuit's recent decision in *Discover Bank v. Vaden*, 396 F.3d 366 (4th Cir.2005). In *Vaden*, the Fourth Circuit held, based on the plain language of § 4 of the FAA, that a federal court has subject matter jurisdiction to compel the arbitration of claims which, in the absence of an agreement to arbitrate, could have been litigated in federal court based on federal question jurisdiction. In reaching its decision in *Vaden*, the Fourth Circuit rejected the position, taken by a number of its sister circuits, that the existence of underlying federal claims is insufficient to establish federal question jurisdiction over a motion to compel arbitration under § 4 of the FAA. This alternative position has come to be known as the *Westmoreland* doctrine. In *Westmoreland Capital Corp. v. Findlay*, the Second Circuit held that "the text of § 4 does not confer federal question jurisdiction where the claim of federal jurisdiction is not based on the petition itself, but rather on the federal character of the underlying dispute." 100

F.3d 263, 267 (2d Cir.1996)(internal quotation omitted). The *Westmoreland* court reasoned that the statutory language was intended "as a response to the antiquated common law principle that an agreement to arbitrate would oust the federal courts of jurisdiction" rather than to confer subject matter jurisdiction to compel arbitration of disputes in which the underlying claims were federal. *Id.* at 268 (adopting the reasoning of Judge Leval in *Drexel Burnham Lambert, Inc. v. Valenzuela Bock*, 696 F.Supp. 957 (S.D.N.Y.1988)). The Fourth Circuit clearly rejected this analysis in *Vaden*.

The Fourth Circuit's decision in *Vaden* was also based on the language of § 4 which states,

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. The *Vaden* court focused on three phrases within § 4. First, the court determined that, "save for such agreement," must mean "that the district court would have jurisdiction of the case even if the agreement had never existed." *Vaden*, 396 F.3d at 369. The court concluded, "We thus read this phrase as an instruction to set aside the arbitration agreement and then consider the grounds for federal jurisdiction independently." *Id.* Second, the *Vaden* court noted that Congress referred to "Title 28" generally, rather than specifying only diversity jurisdiction. The court therefore concluded that the "general reference to 'Title 28' means a party

may petition a district court to compel arbitration if the district court would have subject matter jurisdiction of the underlying suit by virtue of any provision in Title 28." *Id.* at 370. Finally, the court focused on the phrase "the controversy between the parties." It noted that, "[t]hose urging adoption of the *Westmoreland* doctrine would interpret the phrase . . . to encompass only the discrete dispute about whether there is a valid arbitration agreement" but then concluded, "We think the more natural reading of the phrase is as a reference to the overall substantive conflict between the parties." *Id.* Thus, the court held that if the underlying claims that one party sought to arbitrate were federal in nature, a federal district court would have jurisdiction to consider a suit to compel arbitration under 9 U.S.C. § 4.

This Court must now determine whether *Vaden* and the Fourth Circuit's rejection of the *Westmoreland* doctrine support a finding of subject matter jurisdiction to confirm or vacate arbitration awards when the underlying claims that were arbitrated include claims arising under federal law, specifically, securities fraud claims. Petitioners argue that to the extent the Fourth Circuit has found federal subject matter jurisdiction in connection with § 4, the same reasoning should apply to §§ 9 and 10. Respondents counter that position by arguing that the language of §§ 9 and 10 of the FAA, which provide respectively for the confirmation and vacation of arbitration awards, differs significantly from the language of § 4 upon which the *Vaden* decision was based. Accordingly, they argue that *Vaden* is inapplicable to resolving this question, and that this Court should follow the decisions of the appellate courts that have held that the district court should not look to the underlying dispute to determine whether federal question jurisdiction exists for purposes of 9 U.S.C. §§ 9, 10.

Section 9, which provides for confirmation of arbitration awards states that, "If no court is specified in the agreement of the parties, then such application [for confirmation] may be made to the United States court in and for the district within which such award was made." 9 U.S.C. § 9. Section 10 states that, "In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration- . . . (4) Where the arbitrators exceeded their powers . . ." 9 U.S.C. § 10. These sections do not include the three phrases that the Fourth Circuit interpreted in *Vaden.*

In addition to the absence of the three phrases on which the Fourth Circuit based its holding in *Vaden,* other circuit courts have held that the existence of underlying federal claims is not sufficient to convey federal subject matter jurisdiction to entertain a motion to confirm or vacate an arbitration award. Although some of these circuit court decisions are based in part on the *Westmoreland* doctrine, *see Greenberg v. Bear, Stearns & Co.,* 220 F.3d 22, 26 (2d Cir.2000) ("The holding in *Westmoreland* logically extends to motions to vacate an arbitration award under § 10 of [sic] FAA."), at least two circuits have reached the same conclusion while assuming, *arguendo,* the interpretation of § 4 adopted by the Fourth Circuit in *Vaden.*

In *Kasap v. Folger Nolan Fleming & Douglas, Inc.,* the D.C. Circuit upheld a district court's decision that it lacked subject matter jurisdiction to vacate an arbitration award when the underlying claims were for violations of § 10(b) of the Securities and Exchange Act. 166 F.3d 1243 (D.C.Cir.1999). In *Kasap,* the appellant argued precisely the position put forward by Med–Tel at oral argument before this

Court—that 1) the plain language of 9 U.S.C. § 4 confers federal jurisdiction when the underlying claim to be arbitrated is federal, and that 2) Section 10 should be similarly interpreted because it would be anomalous for the statute to allow a federal court to order arbitration in a particular case (based on federal question jurisdiction over the underlying dispute) but not allow the court to vacate an award in the same case. *Id.* at 1246–47. However, the D.C. Circuit reasoned, "assuming *arguendo* that appellant's reading of § 4 is correct, we do not see how he can transport the unique jurisdictional language of § 4 into § 10." *Id.* at 1247. It concluded, "even if by focusing on the exact wording of § 4, appellant can-in accordance with the Supreme Court's suggestion-establish federal question jurisdiction over some kinds of § 4 proceedings, the same words are not in § 10. He who lives by the *in haec verba* form of analysis dies by it." *Id.*

In *Kasap*, the court assumed that the appellant's (and the Fourth Circuit's) view of § 4 was correct, and still found that there was no federal question jurisdiction under § 10 based on the federal nature of the underlying claims.[3] The *Kasap* court clearly did not rely on the *Westmoreland* reasoning in order to reach its decision. The Seventh Circuit reached a similar result in *Minor v. Prudential Sec. Inc.*, 94 F.3d 1103 (7th Cir.1996). In *Minor*, the Seventh Circuit stated,

> The language giving rise to the argument that an underlying federal question is sufficient for federal jurisdiction under § 4 is absent from § 10. Section 10 does not state that a party "may petition any United States district court which, save for [the arbitration] agreement, would have jurisdiction under Title 28," to vacate an arbitration award.

And we see no reason to artificially import the language into § 10, since we do not believe it is necessarily anomalous for Congress to have intended that federal courts take jurisdiction for purposes of a motion to compel where the underlying dispute is federal, but not take jurisdiction on a parallel motion to vacate.

*Minor*, 94 F.3d at 1106–07 (alteration in original). Based on this reasoning, the Seventh Circuit concluded that, "a district court has subject matter jurisdiction over a petition to vacate an arbitration award pursuant to 9 U.S.C. § 10 only where diversity of citizenship exists or the motion discloses a federal question on its face." *Id.* at 1107.

Finally, the only district court in this circuit to address this issue after the Fourth Circuit's decision in *Vaden* held that it did not have subject matter jurisdiction over a motion to vacate an arbitration award even though the underlying claims were premised on violations of the federal Fair Labor Standards Act. *Cole v. Long John Silver's Rests., Inc.*, 388 F.Supp.2d 644 (D.S.C.2005). In *Cole*, the applicant argued that the application to vacate stated a federal question because the arbitrator had misinterpreted the Federal Arbitration Act and the Fair Labor Standards Act when he held that the claimants could proceed as a class in the arbitration. 388 F.Supp.2d at 648. The court rejected this argument, concluding that the question of whether the claimants could proceed as a class was governed by state law. *Id.* at 650. Although the applicant did not argue that the claimants' underlying FLSA claims provided subject matter jurisdiction over the application to vacate the arbitration award, the court added, "Even if Respondents did base jurisdiction on Claim-

---

**3.** In addition, the federal claims at issue in *Kasap* were securities claims, the same type

of claim that Med–Tel asserts as a basis for federal jurisdiction in its Motion to Vacate.

ants' underlying FLSA claims, the Court would nonetheless conclude that jurisdiction did not exist. At the present juncture, the sole decision made by the arbitrator is whether the arbitration agreement permits Claimants to proceed as a class. The Court's review of this decision is too far removed and too tangentially related to Claimants' allegations of FLSA violations to support jurisdiction." *Id.* at 650 n. 3.

A similar issue appears in the motions before this Court. The sole decision that this Court has been asked to address is the arbitrator's decision that the claims asserted by respondents were arbitrable under the arbitration clause of the 2003 Merger Agreement. This decision does not implicate, let alone hinge on, interpretation of the federal securities laws under which petitioners argue their case "arises." Determination of the issue of arbitrability is certainly "far removed" and "tangentially related" to respondents' allegations of federal securities law violations. It is also clear that the Application to Vacate does not "disclose a federal question on its face," *see Minor,* 94 F.3d at 1107, since the only question presented for review is whether the arbitrator exceeded his authority by arbitrating claims that were outside the scope of the contractual arbitration clause. To the extent that answering this question might require the application of federal law, it would require only application of the FAA, which, as discussed *supra,* cannot be asserted as the basis for federal question jurisdiction over the Motion to Confirm and Application to Vacate.

In sum, although the Fourth Circuit has broken with those circuits adhering to the *Westmoreland* doctrine in finding "unique jurisdictional language" [4] in § 4 of the Federal Arbitration Act, that language is not present in § 9 or § 10. The Supreme Court has foreclosed the argument that the Federal Arbitration Act itself creates federal question jurisdiction, and neither the removed Motion to Confirm nor the Application to Vacate filed in this court disclose on their face any substantial question of federal law independent of the Federal Arbitration Act. On remand, the key issue for the state court will be to determine whether the securities fraud and other claims asserted by respondents were properly subject to arbitration under the 2003 Merger Agreement.

III. Conclusion

For the foregoing reasons, the Respondents' Motion to Remand has been GRANTED, and the applicants' Application to Vacate Arbitration Award Pursuant to 9 U.S.C. § 10 has been DISMISSED, by an Order issued on December 2, 2005.